Judge Underwood
delivered the Opinion of the Court.
Stevens and his wife filed their bill, to have partition of a thousand acres of land, among the devisees of John Gore, senior, according to the provisions of his will.
With the decree of the court, all the parties, except Benjamin Gore, the appellant, seein to be satisfied. He claims more land than the court has decreed to him, under the following facts.
. It seems that the testator was the patentee of one thousand acres of land, situated in the county of Montgomery. As early as 1797, the appellant removed from Virginia, — where his father, the testator, lived, and where he died, and settled upon a part of the thousand acres. Some time thereafter, John Gore, junior, who had removed from Virginia, and settled on the same tract, before his brother Benjamin, caused two hundred acres to be laid off, by metes and bounds, for the appellant, including his settlement. In thus laying off the two hundred acres, John Gore, junior, acted as agent for his father, and under authority from him. In 1810, or 1811, two deeds were prepared in this state, and sent, by John Jamerson, to Virginia, for the purpose of having them executed by the patentee — conveying by one of the deeds the two hundred acres laid off for Benjamin Gore, to him ; by the other deed, two hundred acres of the one thousand, to John Gore, junior, which had been laid off by metes and bounds for him. Jamerson, as agent for the two sons, carried the deeds to Virginia, and they were executed by their father, and delivered to Jamerson, who deposited them with the clerk of Culpeper county court, for the purpose of having their execution prov- *202 et] before him, by the subscribing witnesses, the testator being too infirm at the time to go before the clerk, to acknowledge their execution. Jamerson returned to Ken-Dicky before the execution of the deeds was proved, leaving them with the clerk. The testator thereafter addressed a note to the clerk, requesting that the deeds might be sent to him, and it was accordingly done. Upon the day of the publication of his will, the deeds’were thrown into the fire and consumed.
The will gives one hundred and twenty five acres of the thousand to Fanny Gore, and directs that the balance should be equally divided among his other children, all of whom are named in the will, and from which it appears there were six besides Fanny.
Patsey Reynolds, named by the testator, as a devisee, and one of his daughters — for whom a sixth part of the thousand acres was intended, after deducting the devise of one hundred and twenty five acres, to his daughter Fanny — was dead at the time the will was executed. The court, in the decree, assigned the portion thus devised, to William Reynolds, heir of said Patsey.
In 1804, Warner’s lessee recovered a judgment, in an action of ejectment, against Benjamin Gore. Warner claimed under a patent for five hundred acres, elder than that of John Gore, senior. Benjamin Gore confessed the judgment, reserving equity. In 1813, Warner conveyed his five hundred acres to George Horine, who, in 1815, conveyed the same to Benjamin Gore, with the exception of one hundred and twenty acres conveyed to James Bourn, and a parcel to Reuben McDonald.
In 1809, James French conveyed to Benjamin Gore, two hundred and fifteen acres of land, including his residence. The title which Fi’ench thus passed to Benjamin Gore, is founded on a patent to John Edwards, of older date than .that to John Gore, senior.
Benjamin Gore insists, that he has a right to hold the land covered by the deeds from his father, French and Horine. But the court disregarded his title thus set up, and permitted him to'claim only under the will of his father.
Questions to be decided.
A judgment of eviction against a tenant, destroys the relation between him and his land lord; and the tenant may then, without waiting for the ha. fa. to be executed, purchase any 0-ther title for his own benefit.
vise or legacy A devisee cannot claim and hold, under a title adverse to that of the testator, any thing devised to him, and at the same time, take a de-under the will. He must acquiesce in the testator’s right to the disputed property, and surrender it to the devisee to whom it is given, or forego the benefit ol any devise or legacy to himself.
II appeared, in proof, that Benjamin Gore had received, under the will, slaves and money. There was a devise to him of one hundred acres of land on Salt River ; but it does not appear that he ever took possession of it, or in any way used or set up claim to it. There is testimony conducing to shew, that the testator had, in his life time, conveyed his land on Salt River to his son John.
Two questions arise upon the preceding facts: 1st. Is Benjamin Gore estopped or precluded, from setting up a title adverse to that of his father ? 2nd. If he is, does the decree give him as much land as he is entitled to ?
There are two grounds upon which it is contended, that Benjamin Gore cannot set up titles inconsistent with his father’s patent. First — The fact that he entered under his father’s title, and held as a tenant, or quasi tenant, under him. Second — The fact that he received benefit from the will: and therefore, it.is contended, he cannot now set up a defence inconsistent with the will.
It satisfactorily appears, that Benjamin Gore entered under the title of his father, and held for some time as his tenant. But, by the judgment in ejectment the relation which he bore as tenant, to his father, was destroyed, and thereafter he was at liberty to make terms with the successful claimant, or others holding superior titles. It was not necessary for him to wait until actually evicted by the habere facias, before he could be permitted to purchase in the adverse titles.
There is no foundation for imputing fraud to Benjamin Gore on account of the confession of judgment. We, therefore, perceive no reason, why he is not entitled to the full benefit of the patents to Warner and Edwards, unless it can be found in the second ground of objection.
It is one of the leading maxims in equity, “that a person shall not claim an interest under an instrument, whether a deed or a will, without giving full effect to that instrument as far as he can.” — “ If the testator gives what is not his property, but which he supposes to be his, and gives to the person whose property it is, an in- *204 ferest by his will, that person will not be permitted t& defeat the disposition where it is in his power, and yet take under the will ; and the same rule applies,, though the testator knew he had no right to dispose of the lands, and yet knowing it, takes upon himself to dispose of them. No principles are better established by authority than the foregoing, which are extracted from 2 Maddock’s Chancery, 48. It results from their application, that if the testator knowingly attempted to devise land which belonged to his son Benjamin, and in the same will, made a provision for his said son, he could not claim the benefit of such provision-,-without surrendering the title to the land in favor of the devisee, to whom it may have been given.. If Benjamin Gore were proceeding to recover the money which he was entitled to under the" will, there can be no doubt, but the chancellor would compel him to abide by all the provisions of the will, before affording him relief. It would be competent to compel him to make his election, whether he would claim under, or against, the will. ,
„ Where a devi-see, who claims some oi the pro. perty devised, by a title adverse to that of the testator, ac-cefves other pro-pertybequeath-thesamTwUh-it is tantamount and'lie wiU° be compelled to sur versary claim to the other devi-
But his counsel contend, that he is not asking the chancellor for relief; on the contrary, it is urged that he is . . , 1, 0 . , acting in defence of Ins fire-side. We think his attitude can ma]ie n0 difference. As complainant, or defendant, ,, 1 , y he must equally submit to all the provisions of the will,. or ren0!ntce its benefits. He has already taken its benefits. Shall he now savr u I ought not to have received them ” We cannot tolerate such a defence. The act of receiving the benefits, or legacies, of the will, is an elec-^on abide by its provisions, if, at the time, he had a knowledge of all his rights. We infer from the proof, that the accounts of the estate had heen so far settled and adjusted, that he knew all the facts necessary to enable him to make his election, in such manner as to promote his interest. It may be, that he will gain more by sub-Knitting to the will, and a partition of the land, and taking his share of the slaves and personalty, then he would do, were he to renounce all interest in the slaves and personalty, and hold the land to the extent of his claim.. Under such circumstances, having accepted his share of the slaves and personal estate, and not having, in his an *205 Swer, proposed or offered to return them, he should be compelled to abide by it, as an election, and should not be permitted to change his mind, as subsequent circumstances may unfold different views. “ In a case (says Maddock, 2 Vol. 55,) where a widow had conflicting interests under her marriage settlement, and her husband’s will, and she proved the latter, acted under it, and received rents for six years, she was considered as having made an election.” The same author (2 Vol. 60,) says : “ Where a party has made an election, and proceeds, contrary to such election, to recover estates at law, an injunction will be granted to restrain him.” The facts shew that the requisite essential to an election, may be found in the conduct of Benjamin Gore, in accepting his share of the personalty. Roper on Legacies, 2 Vol. 389. We cannot, therefore, suffer him now to set up titles derived from the patents to Edwards and Warner, and the burnt deed in opposition to the will. The case of Groves vs. Kennon et ux. 6 Mon, 632, does not militate against the foregoing view.
2nd question.
The heir of r, devisee, or legatee, who was dead when the wiil was made, or died before the testator,does not take tile pro. perty so given-it’is a lapsed legacy, or devise.
It remains to enquire, whether the quantity of land allotted to Benjamin Gore, is as much as he was entitled to. Patsey Reynolds was dead before the making of the will. If the devise in her favor be regarded as lapsed, so that it cannot pass to her son, then the portion allotted to Benjamin Gore, should be increased, by adding to his share. There are no words in the will, going to shew that the testator had in his mind a son of Patsey Reynolds. How then can the son take the devise to the mother, she being dead before the will was executed ? He cannot do it from any words in the will, and we have no legal authority to substitute him in the place of his mother. It is clear, that he cannot make a title to any part of the land, as heir to his mother, because no estate ever vested in her under the will. These positions are fully sustained by Roper on Legacies, 2 Vol. 320 It was erroneous, therefore, on the part of 'the circuit court, to decree to William Reynolds, the share which the will purports to give to his mother. This would be true even if Mrs. Reynolds had been alive when the will was executed, and had died before the testator. In that event, *206 as (here is no provision shewing, who was to take the portion designed for her, it would strictly be a lapsed legacy or devise; and as there is a clause in the will giving all the residue of his estate, real and personal, to certain named devisees, among whom, neither Mrs. Reynolds, nor her son, is mentioned, such portion might probably pass into the residuum, and go to the residuary de-visees, to the exclusion of Mrs. Reynolds’ son.
Personal property of a testator, which being lapsed legacies, or from a-uy other cause, passes not by the will, goes to the general, residuary legatee, if any. Otherwise astoreaZ estate, which, being a lapsed devise, onyhich. from any other cause,passesnot by the will, de-scends to the heirs.
But be that as it may, as Mrs. Reynolds was not living when the will was made, it is a question,whether the devise in her favor, can be considered so far in the nature of a lapsed 'legacy, or devise, as to pass to the residuary devisees ; or whether the portion apparently intended by the face of the will for her, should be considered as so much estate, not diposed of by the will,which should descend according to the statute of descents.
If it be regarded as a lapsed legacy of personal property, the law as laid down in Hop er, and all the books we have examined,will give the portion to the residuary devisee's ; notwithstanding the probability that the testator would have given it to the heir of his daughter, had he known of her death. The courts, however, cannot seize on that probability, and undertake to make a will for him, contrary to the settled rules upon the subject. If it be regarded as estate not embraced by the will; if the testator can be considered as dying intestate in respect to it, then it will pass,to his heirs by descent, and William Reynolds, the grandson, will be entitled to a small share of that, which the will purports to give to his mother. In the one case, he loses all; in the other, gets a trifle.
The residuary legatee of the testator’s personal estate, if he be general legatee, will be entitled to “ whatever may, by lapse, invalid disposition, or other casualty, fall into the residue, after the date and making of the will. ” Roper, 2 Vol. 453. If the provision for Mrs. Reynolds had been a bequest of money, there could be no doubt, under the authority of the adjudged English cases, that the residuary devisees would take it, instead of the next of kin, or the executor. As, however, it is a devise oí land, will that alter the rule ? The authorities say it *207 does. A residuary bequest of personal estate, (according to Maddock, 2 Vol. 93,) carries not only every tiling not disposed of, but every thing that is ill disposed of, and every thing that in the event, turns out not to be disposed of, whether by a partial revocation of the will, a lapse, or by a gift being void, or not sufficiently disposed of, or given on a contingency which does not happen; or otherwise.” But in this broad rule in favor of the residuary legatee, Maddock has inserted, by parenthesis, that the rule is otherwise as to real estate. To shew that the rule is otherwise in respect to land, he cites Ambl. 580, and 1 Vez. 322. Lord Camden’s opinion, as given in Roper on Legacies, 2 Vol. 458, takes the distinction between the personal, and real estate, and admits the rule in the one case to be, that the residuary, general legatee will take lapsed legacies, and every thing which does not pass by the will, with the exception of real estate. The reason for the difference, may be found in the desire of the courts to prevent the residuum from going to the executor, in the one class of cases, and to benefit the heir at law in the other. We shall adhere to the distinction, and regard the portion of land which would iiave passed, under the will, to Mrs. Reynolds, had she survived the testator, as so much estate of which he died intestate. Benjamin Gore should have his share of this land ; and William Reynolds, instead of the whole of it, as representing his mother, is entitled to a seventh part only, as an heir of his grandfather.
The vendees of one who, upon taking under a will, was compelled to relinquish the land which he had sold as his own, but which the testator had devised to others, will be in no wise affected by any partition among the devi-sees, to which they (the ven-dees) were no parties.
Ringo, &c. who may have purchased from Benjamin Gore, or any other of the devisees, cannot be affected by any partition made among the devisees and heirs, to which they are no parties. Nor will such partition hereafter, prevent them from asserting such rights as they have, when molested. It is very possible, that the ven-dees of Benjamin Gore may occupy a more favorable attitude than he does; but of this we can only conjecture, until they are properly made parties, and the nature of their claims fully presented. We cannot now say, that the claims of such vendees will have a material bearing upon the division which may be made between the de-visees and heirs, or that their rights will be materially *208 affected by the sales which Benjamin Gore has heretofore made. If the land allotted to him, covers all that .he has sold, such allotment will inure to the benefit of his vendees.
The decree is reversed, with costs, and the cause remanded, for proceedings not inconsistent herewith.