Judge Ewing
delivered the Opinion of the Court.
Pleak brought an action of trespass quere clausum fregit, against Mary and Walker Chambers.
The defendants pleaded liberum tenementum, and, to sustain their plea, exhibited a regular chain of title from the patent of John Gore, deceased, dated the 16th day of March, 1786.
The plaintiff exhibited, or proposed to exhibit, a regular claim of title down to himself, from the patent of Peter Warner, dated the 2d day of December, 1785.
Both parties proved that their respective patents covered the land in contest.
The defendants, to avoid the effects of the elder grant, adduced proof tending to show a prior and continued possession from 1794, to the date of the alleged trespass, either by themselves, or John Gore, or those claiming under him.
The plaintiff, to avoid the effect of this possession, *61 and the statutory bar in consequence thereof, offered as evidence, the record of a judgment, in favor of Peter Warner, the elder patentee, against the tenants of John Gore, the younger patentee, obtained by confession, in the Montgomery Circuit Court, in the year 1804. To the reading of this record, the defendants objected, and the Circuit Court sustained the objection, and a verdict being found, and judgment rendered for the defendants,, the Plaintiff has brought the case to this court.
Objections to the record.
A tenant is held to strict fidelity to his landlord: he cannot change the relation in which he stands to him, by any contract with, or any attornment to, an adversary claimant. Nor would the title of, the landlord be affected by a recovery of the land in consequence of fraud and collusion by the tenant. But—
An eject having been brought upon a title superior to that of the landlord of the tenants in possession, (who were his sons) they confessed the judgment, with a reservation of equity: held, that the record of that recovery does not per se show any fraud or collusion on the part of the tenants, or that their landlord was not bound by the judgment.
It was incumbent on him to assert the equity, if any in fact existed; and if he failed to do so, or to protect his tenants, it was lawful for them, while the judg’t remained in force, to take shelter under that claim, without waiting to be turned out by the actual execution of process upon the judgment.
One of several tenants, in such case, purchasing from the adversary claimant, would not be bound by any allegiance to his late landlord, to restrict his purchase to his own tenement. He has the same right to purchase to any extent, including the places of other tenants, that a stranger would have.
The main ground relied on by the defendants, to sustain the opinion of the Circuit Court in the rejection of the record, is that the judgment was and is void, being fraudulent, per se, on the ground that it was a confession by the tenants in possession, against the interest of their landlord and without his authority.
It is an unquestionable rule of law, founded in the soundest principles of morals, that tenants are held to the strictest fidelity to their landlords. They certainly cannot make a valid contract, in pais, with an adversary claimant, or attorn to him, so as to change their relation to their landlord, or, effect his interest or possession.— And they assuredly would not be permitted, by combination" or collusion with an adversary claimant, or other colourable pretexts, to evade the operation of this rule, by the forms of a judicial proceeding. In court, or out of court, any act done by the tenants, in collusion with an outstanding adversary claimant, to overreach or affect the interest of their landlord, would be denounced by the law as faithless infidelity, inconsistent with their allegiance to him, and treated as null and void.
But there is no foundation for an imputation of collusion in this case.
Ben Gore, John Gore junior, and James Bourn, (with *62 two others) were the defendants who confessed the judgment.
The two former were sons, and the latter a son-in-law of John Gore senior, who was their landlord.
They all had just reasons to conclude, that the land would be divided between them, and other children of John Gore, and that their possessions would eventually enure to their own benefit, as they all had been permitted to settle on the premises by their father. John Gore junior took possession of the whole premises under a general, though awkardly worded, power of attorney, from his father, authorizing him to superintend his interests. A suit was brought by Warner upon an elder, and evidently paramount and superior legal claim. The suit had progressed to the service of process, and the common order made. And at a subsequent term, the defendants came into court and confessed judgment, with a reservation of equity, and a stay of execution till the next court.
We cannot perceive any thing in these facts, that would lead to the slightest suspicion, that there was in fact fraud or collusion. And we recognize no principle of law which would declare it fraudulent per se. Any defence, which could have been made at law, would have been wholly unavailing. And the tenants to avoid costs and useless litigation, did no more than their landlord himself, had he been personally present, as a prudent and discreet man, would have done.
Whether any equity was set up against the judgment, or writ of habere facias sued out upon it, does not appear in the record.
It was the province of the landlord to set up and assert the equity, if any existed. And if he failed to do so, or to afford further protection to his tenants, it was competent for them to protect themselves, by taking shelter under the adversary claim, without waiting to be turned out by the coercive process of the court. Gore vs. Stevens, 1 Dana, 203. Ben Gore, therefore, might lawfully purchase the adverse claim of Warner, after the judgment against him, as a protection to his own possession, and having a right to purchase with a view to that ob *63 ject, we are apprised of no principle which would restrict him in the extent of this purchase, or limit him to his own tenement alone.
A recovery in inject, cannot extend to the possession of a tenant who was not served with process. A statement in a record that 'the parties appeared,' applies only to those who had been served with process.
A tenant in possession against whom a jud't of eviction has been rendered, may purchase in the adverse claim or take shelter under it, at any time while the judg't remains in force; but not after the demise in the dec’n has expired. When that occurs—the possession having remained undisturbed in the mean time— the tenant’s allegiance to the landlord under whom he entered, revives, and he can do no act inconsistent with it. The possession, in that case, is still that of tho landlord—in whose favor the statute of limitations continues to run, as tho’ there had been no recovery.
His fidelity to his landlord, is applicable to the tenement or possession acquired from him, and held under him alone, and not to. other tenements claimed or possessed by others under him. As to those tenements, his relation to his landlord, places him under no restraint. And he may exercise the same liberty in purchasing, which might be exercised by any other.
But Ben Gore, by his purchase, acquired only the rights of Warner, to the extent of his purchase, and no others; and the process not having been executed upon Oliver Wallace the judgment cannot be construed as applying to him. “The parties having appeared,” &c. means only those upon whom notice of the declaration was served. As Warner could not, therefore, have rightfully sued out execution of habere facias against Wallace, for his tenement, neither could Ben Gore after he purchased his claim. The judgment, therefore, could avail nothing against Wallace, or the tenement occupied by him at the time of its rendition.
John Gore, proves, that Oliver Wallace then lived some where on the land, now occupied by the Chamberses. But he does not prove the extent of his tenement, or possession; or whether it covered the whole land now in contest, or the whole present possession of the defendants. If it did, then would the record of the judgment have been properly excluded as irrelevant.
But it appears that the demise in the declaration of Warner, expired on the 25th of September, 1813; and that Ben Gore purchased the adverse claim of Warner on the 21st day of March, 1815, as appears by the deed of Horine to him. And it does not appear from the record, that he purchased or took shelter under that claim sooner, or that a any writ of habere facias possessionem was ever taken out or executed on the judgment.
Now, though a tenant may, while a judgment is in *64 force against him, yield to, and take shelter under; the adverse claim, and is not bound to wait to be turned out of possession by coercion: yet when the judgment ceases to be in force, or the power to oust him by coercion has passed by the expiration of the demise in the declaration, he cannot yield to it, or take shelter under it, consistent with the obligation which he owes to his former landlord. In the former case, he may yield, because liable to be turned out; in the latter, he ought not to yield, because no longer liable to be amoved.
He may yield obedience to the judgment while the same is in force, but when no longer in force his obedience is due to his former landlord.
And if the tenant is not, turned out by writ of possession, nor does not take shelter under the adverse claim while the judgment is in force, or before the demise expires, his possession is still the possession of His former landlord, and the statute of limitation still runs on in his favor.
By the judgment, Ben Gore and the other tenants were left at liberty to yield to it, and take shelter under Warner’s claim while the judgment was in force, of available to oust them from their possession. But if they did not do so, nor were turned out of possession, their relation to their former landlord, in the mean time, was not changed, nor the statute stopped from running on in his favor; 4 Litt. 233, Smith vs. Hornback; 2 Bibb, 150.
As Ben Gore did not yield to the judgment and take shelter under it, while it was in force, and as it was never executed, from aught that now appears in the record, his relation to John Gore, His former landlord, remained as before, unaffected by the judgment; his possession the possession of John Gore; and the statute of limitation would still run on in favor of John Gore, and those claiming under his title, notwithstanding the judgment of Warner.
The record of the judgment of Warner therefore, as now exhibited, availed nothing to check the operation of the statute in favor of John Gore’s claim, and was, therefore, properly rejected by the Circuit Court.
The judgment of the Circuit Court is therefore affirmed.