Judge Ewing
delivered the Opinion of the Court.
This is an action of ejectment brought by the Chamberses against Pleak, and verdict and judgment for Pleak, from which the plaintiffs have brought the case to this Coui’t. Errors are assigned questioning the opinions of the Circuit Court, in the instructions given to the jury at the instance of the defendant, and in refusing the instructions asked by the plaintiffs.
Some of the matters involved in this controversy have been heretofore twice examined by this Court — first, in the case of Gore against Stevens, 1 Dana, 201; secondly, in the case of Pleak against Chambers, decided at the last spring term. [5 Dana, 60.] But there was a material difference in the proof in each case.
Indeed, there is a censurable carelessness, or unskilfulness, in the preparation of this, as well as the last mentioned case, which renders it exceedingly difficult for this Court to understand the record. A connected plat is made out, but the boundaries of the different tenements, or of the adversary claims, are not laid down, nor the places of the different settlements, under the claim of John Gore. Depositions are taken, in which the witnesses are not made to refer to objects exhibited on the connected plat, but to speak of and attempt to illustrate their ideas about places by a reference to relative objects upon the ground, which are unknown to this Court, and are not exhibited on the connected plat. Good causes are often lost by culpable negligence in their preparation.
From what can be collected from the record, it seems that a patent issued to John Gore, for one thousand acres of land, on the 16th of March, 1786.
*427 That one issued to Peter Warner, on the 2d day of December, 1785, for five hundred acres, covering a part .of the same land. That both patents cover the land in contest? That John Gore, junior, son of John the elder, under and by virtue of a power ‘of attorney from, father, entered upon the one thousand acres, taking possessidn of the whole, in 1794, and remained on the same. That he made leases of several parcels to different tenants,-and laid off two hundred acres, and put Ben. Gore, his brother, in possession of it:-all as agent of his father, and under his titles.
Warner, on his elder patent, brought an action of ejectment against John Gore, junior, Ben. Gore and the other tenants, and recovered a judgment in 1804. The-demise m the declaration was laid at ten years, and expired in September, 1813.
John Gore, senior, filed a bill, and obtained an injunction against the judgment, in which he set up a superior equity under his claim. '
The bill was depending until 1818, when it was dismissed. Of course, no writ of possession was ever sued; out on the judgment, until after the- expiration of thedemisé-fin the declaration.
Reynolds, who married a daughter of John Gore, senior, removedlo the country, as near as can be collected upon the testimony, in 1811, ’12 or ’13, and was settled on the land by John Gore', junior, at the improvement, it is believed, occupied by himself, when the judgment of Warner was recovered, claiming, as son-in-law , and to hold under John Gore, senior, in right of his wife; and a short time thereafter, John, the agent, caused one hundred and twenty acres to' be laid off to him, embracing his improvement.
Reynolds, some short time afterwards, sold twenty five' acres of his tenement to Glover, and put him in possession thereof, and afterwards, sold to him twenty five acres more, and put him in possession. Glover and those claiming under him h?.ve remained in possession ever since.
Pleak, the defendant, claims finder Glover’s purchase.
A tenant, or quasi tenant, or one who has entered under either, cannot attorn to a stranger; nor take any title to hold adversely to the landlord; nor set up any outstanding claim against him; nor controvert his title; nor take shel ter under .any other. But—
Whenever it is demonstrated by a judgment, that the landlord's title is bad, and will not protect the tenant, he may secure his possession, by purchasing and holding an adverse claim, with out his landlord s consent,or aformal eviction.
*428 The precise time when Glover purchased and was placed in possession of the first twenty five acres, does not appear. But it is probable from the proof, that it was not earlier than. 1814. Deeds were not made to him until 1816, for the first twenty five acres, and 1820, for the second.
John Gore, senior, died in 1816, leaving a will, by which he directed said tract to be divided among his children; in pursuance to which, by a decree of the Court, in 1834, a division Wfas directed, and deeds of partition executed in June, 1835, by which the land in part covered by Glover’s purchase, was assigned to Mary Chambers, a daughter of one of the plaintiffs, under whom the other plaintiffs claim. ,
There is testimony in this record, tending to show that Ben. Gore contracted for the purchase of Warner’s title, before the expiration of the demise in the declaration, though he did not take a deed until after.
It seems, also, that he sold to Reynolds so much of Warner’s claim as was embraced in the one hundred and twenty acres laid off to him, by John Gone, junior. But this purchase by Reynolds, was not made until November, 1813, about two months after the expiration of the demise in Warner’s declaration. ■
From these facts, it is clear that John and Ben. Gore and Reynolds all entered as tenants, or quasi tenants, under the title of John Gore, senior. This being their attitude, the following principles may be laid down, as settled by the former decisions of this Court.
That as tenants, or quasi tenants, they could not legally attorn to a stranger, or take shelter under an adversary claim, or purchase in or set up the same, in opposition to their landlord, or controvert his title, or set up an elder outstanding claim against it. And any person entering under them, or either of them, or deriving title from them, will stand in no better condition than they. 1 Stat. Law, 444; Philips vs. Rothwell, 4 Bibb, 34; Swan vs. Wilson, 1 Marshall, 99; Morgan vs. Ballard, 1 Mar., 558; Hamel vs. Lawrence, 1 Mar., 330; Turley vs. Rogers, 1 Mar., 245; Foster vs. Morris, 3 Mar., 611; Conley’s Heirs vs. Chiles, and other cases, sparsim.
Qu. Will a judg t against a landlord s title, pending an injunction against the judgment, justify his tenant in purchasing,or taking shelter under, an adverse claim? But if he retains the possession, under the landlord, after the judg’t, until the demise has expired, his condition and duty to his landlord, are then again the same as though no judg’t had been recovered. For —
In ejectment, the term to come, as laid in the dec n, only, is recovered; and after that has expired, the judg’t can neither be enforced by ex'on, nor revived by sci. fa-, taking possession under it, would be a trespass ;and though the judg t, or pro ceedings, were suspended hy injunction, the effect is the same. But—
When proceedings in eject are staid by injunction, and the demise is about to expire, the bill will be dismissed, unless the comp t, will consent to an exten. sion of the demise. Yet, a bill to enlarge a demise, will not be sustained, thcr the proceedings have been staid hy injunction, till the plaintiff is barred by the limitation.
*429 But so soon as it was ascertained by the judgment of the Court, that their landlord’s title' was not sufficient for their protection and security, it' was competent for them to purchase in, or take shelter under, the adverse claim of Warner, without waiting for the consent of their landlord, or for a formal eviction. Fowler vs. Cravens, 3 J. J. Marshall, 429; Lunsford vs. Turner, 5 J. J. Marshall, 105; Foster vs. Morris, 3 Mar., 611; Littell's Sel. Ca., 423; Swan vs. Wilson, 1 Marshall, 99.
But after the judgment was enjoined, it was certainly questionable, whether they could, consistently with their fidelity to then- landlord, have purchased in Warner’s claim, or taken shelter under it, while the injunction was pending. During that period, their possessions were certainly not endangered from' the coercive pro. cess of the Court, at least. But it is deemed unnecessary, in this case, to decide this point.
But as, in the action of ejectment possession for the term only laid in the demise is recovered, after the expiration of the demise the judgment'for the possession is dead, and can no longer be enforced by process, or revived by scire facias, for there is nothing to enforce or revive.- And possession taken under such a judgment would be a trespass, as without color of authority.— Smith vs. Hornback, 4 Litt., 232; Smith vs. Hornback, 3 Marshall, 399; 2 Bibb 149. Nor after the demise has expired can any execution be issued for the possession, though it has been suspended by injunction: the last case above. Nor can the demise be enlarged after judgment, though stayed by injunction, as was settled by this Court in the case of Owings vs. Marshall, 3 Bibb, 27. But a chancellor will dismiss th'e bill of a defendant in ejectment, who is seeking equitable relief, upon motion, unless he will consent to enlarge the demise that is about to expire; but will not sustain a bill, to enlarge it, though process has been suspended by injunction, until the demise has expired, though the lessor is barred in the mean time by the statute of limitations, as was determined in the case of Bowman vs. Violet, 4 Monroe, 355.
As the possessions of the tenatits were no longer en *430 dangered by the judgment after the demise had expired, they were no longer justifiable in taking shelter under it, or in purchasing in the adverse claim — as was determined by this Court, in the case of Pleak vs. Chambers, decided at the last Spring Term. [5 Dana, 60.]
A quasi tenant, after a judg t in eject, for his own and other adjoining land, and before the demise expired, purchased the successful claim; and, after the demise expired, sold to the adjoining ten ant, so much as covered his possession: AeWthat though this new title was available to the first purchaser (who purchased before the demise expired,') it was notso, to the sub-purchaser, who purchased after the demise had expired.
As the possession of a tenant, or one claiming under a tenant, is the possession of the landlord, and, as the acquisition of a title by the tenant to hold adversely, is illegal and void— the statute of limitations, notwithstanding such acquisition of title, by the tenant, will continue to run against it, and in favor of the landlord.
*430 But though, it is admitted to be established now, by the proof, that Ben. Gore contracted for the purchase of Warner’s claim before the demise expired, yet his purchase could only be construed to inure to the protection of his own tenement, which was distinct from the tenement of Reynolds, which is nowin contest. His rights, or the rights or duties of Reynolds, as to the tenement of the latter, were in no other respect changed by his purchase, than to place Ben. Gore, in the place of Warner, with all the rights, to enforce the judgment of Warner, against the other tenements, including Reynolds’ which Warner possessed, and no more.
Therefore, though he purchased Warner’s claim before the demise expired, if Reynolds did not purchase the part conflicting with his tenement, from him or from Warner, until after the demise expired, the necessity for the purchase no longer existed; nor could he say that it was made by the “ consent of his landlord” “or in pursuance to a judgment” within the spirit or letter of the statute. His purchase was therefore without necessity, and repugnant to the obligations due to his landlord, and could not exonerate him, or his tenement, from the relation which he and it bore to him. .And Glover, who came in under Reynolds, stood in the same condition, according to the principles above settled.
As the possession of the tenant, or of him claiming under the tenant, is the possession of the landlord, and as the acquisition of Warner’s claim, by the tenant, was against law and void, it would seem to follow that the statute of limitations would still run on against it, and in favor of the claim of Gore, unchecked by the illegal acquisition of the adverse claim. This principle was settled in the case of Myers &c. vs. Buford, 7 J. J. Marshall, 250, and recognized in the case of Pleak vs. Chambers, above cited.
But while it is admitted that the statute of limitation *431 may still run on against the adverse claim — as a tenant, or quasi tenant, may oust and expel his landlord, and hold adverse to him, especially after the expiration of his lease, when it, is for a limited timersuch expulsion may take place, as well when'he attempts to take shelter under an adverse claim, as when he does not. His attempt to shelter himself under the adversary claim, cannot convert his adverse holding into -a friendly possession, under his landlord, .or chatige the character of his holding. And if, after the expiration 6f his lease, if his lease was for a specific term, he has held ádversely for twenty years or more, it would seem that his landlord, or quasi landlord, or those claiming under him, would be hai'red. of their right of entry, as well in the one case as in the other. Though he cannot controvert the title of his landlord, he may show that it has expired. 2 Starkie’s Evidence, 533; Logan vs. Steel’s Heirs, 1 Monroe, 105. And so if he entered as quasi tenant, under an executory contract of purchase, or looking up to his landlord for a title, if he afterwards ousted him, and held adversely to him, for twenty, or more years, "by his acquiescence, without entry or claim on his part, such ouster or adverse holding would bar his right of entry. Willison vs. Watkins, 3 Peters, 43.
A tenant or quasi tenant may oust his landlord, and hold adversely to him, especially after the expiration of his term; and, after he has done so, the acquisition of an adverse title will not change his holding, or make it again subservient to his landlord And if, after the expiration of his lease, he acquires a title adverse to that under which be entered, and holds under it for 20 years,— the landlord acquiescing--tlie statute, it seemSy will bar the entry of the landlord, quad landlord, or any claiming under either. But—
The statute was intended to quiet men’s possessions, and to secure occupants in the quiet enjoyment of their homes, and should be so construed as to carry into effect this benifieent object of the, Legislature. Nor does it matter whether the possession was acquired by right or wrong. If held adversely for twenty years, the right of entry is barred by the unequivocal provisions of the statute. ■. ■'
It is true that, the possession of the tenant is the possession of the landlord, as the possession of one joint-tenant or tenant-in-common, is the possession of his co-tenant, and will be so deemed by the law, until the contrary appears. But it is certainly competent, in either case, to show by proof, an actual ouster and adverse holding. And if, from the time of such ouster and adverse holding, the landlord or co-tenant has, with a full knowledge of the fact, laid by, and made no entry, or effort to *432 assert his claim — for the peace of society, he ought to -be barred, and the statute, as we conceive, will bar him.
Of an actual ouster of the landlord, by the tenant, or quasi tenant,very clear proof--something more than a taking of the profits, a failure to pay rent, or the acquisition of another title— some open, notorious act of disclaimer & adverse holding, will' be required.
It has been decided that, a pos ■ session of thirty six years, by one tenant-in-common, or joint-tenant, without any account, or demand made, or claim set up by the co - tenants, was sufficient ground to presume an actual ouster; and the same presumption, upon the same facts,might arise in case of a lessee, or purchaser by executory contract.
But it should be remarked that, ouster and adverse holding, should be clearly made out by proof. The bare perception of the profits by one co-tenant, may not avail; nor will the failure to pay rent only to the landlord suffice. Cruise’s Digest, 2d. 318, &c.; 1st vol. 358, &c.; Starkie’s Evidence, 2, 508-9. Nor will the purchasing in or quieting an adverse, outstanding claim, by the tenant, or quasi tenant — he still looking up to the land-landlord for protection, or for the completion, ox further completion, of his title — avail. But to be availing, it should be manifested by some open, notorious, public act of disclaimer, and holding over against the will, and in opposition to the title, of the landlord, or by some forcible act of expulsion. If not manifested by some distinct and unequivocal act of this kind, his possession will be still deemed consistent with the possession of his landlord, or co-tenant. Starkie’s Evidence, 2nd. 512-13.
B ut has been determined in the case of Doe vs. Prosser, Cowper, 217, and other'cases collected in Cruise’s Digest, 1st, from page 358 to 363, that possession for a long period, as 36 years or more, by one tenant-in-common, or joint-tenant, without any account, or demand made, or claim set up, by his co-tenant, was a sufficient ground for the jury to presume an actual ouster. So perhaps, a possession by a tenant after the/expiration of his lease , for so long a period, without the payment of rent, or other act recognizing the title of his landlord, might justify a jury to presume an actual ouster and adverse holding. But these cases go upon the principle that there was an actual ouster, the proof of which is lost by the lapse of time.
The opinions of the Circuit Court, as well in the instructions given at the instance of -the defendant, as in withholding those asked for by the plaintiffs, being in direct conflict with some of the principles settled in the foregoing opinion, the judgment of the Circuit Court is reversed, and cause remanded that a hew trial may be awarded. And the lessors of the plaintiffs are entitled to their costs in this Court.