## Vick's Ex'or, Appellant, *v.* M'Daniel *et al.*

The residuary legatee is entitled to take whatever may by lapse, invalid disposition, or other casualty, fall into the residue after the date of the will.

Where the testator made several specific bequests, and also manumitted several slaves contrary to law and the policy of the state: *Held,* the slaves should go to the residuary legatee, and not to the heirs at law.

APPEAL from the court of chancery.

The appellees filed their bill of complaint in the court below, on the 4th day of December, 1837, in which they averred, that a certain John Vick died without children, or the descendants of them, having previously made his last will and testament, which was duly proved and recorded. That by his will, he emancipated certain slaves mentioned in their bill, which were claimed together with others not emancipated. The appellees also alleged, that they were the sole heirs of said John Vick.

John W. Vick, the defendant, against whom the bill was filed, was appointed executor; took out letters testamentary as such, and had possession of the slaves.

The will was made a part of the record, and shows the disposition of the slaves, and after making several specific legacies, concludes with the following residuary bequest: " And touching and concerning the remainder of my estate not herein disposed of, it is my will and desire that the same shall be given to my brother Burwell Vick, for, and during his natural life, and be, and remain under the control and management of the said John W. Vick, for my brother's use and benefit, and at his death, I give and bequeath the same to the said John W. Vick, his heirs and assigns, in fee simple forever."

It also appeared, that Burwell Vick was a lunatic.

It was admitted, that the direction of the will with regard to the emancipation of the slaves was invalid, and that the question was as to whether the slaves are property of the complainants as the heirs of John Vick, or that of the residuary legatee.

[Vick's Ex'or, Appellant, *v.* M'Daniel *et al.*]

The chancellor decreed the slaves to the complainants below, as heirs at law, from which decree, an appeal was taken to this court.

Taylor and Tarpley, for the appellants.

In a will of personal estate, a general residuary bequest carries to the residuary legatees not only what is not disposed of to others, but also whatever is not legally disposed of so as to pass to the person intended as the object of the testator's bounty. It is otherwise as to real estate. James *v.* James, 4 Paige, 115; Gore *v.* Stevens, 1 Dana, 206.

Every testator is presumed not to intend to die intestate, as to any part of his estate. Therefore, a residuary clause, unless expressly restrained, always passes what is not otherwise disposed of. Dev. Eq. 386. And though residuary legatees are not usually favored, the court will do what it can for them, when the testator manifestly intended to provide chiefly for them. *Ibid.* 387.

The interest of a legacy not expressly disposed of by will, till the persons come into existence who are to take the capital, falls into the residue. Turn. & Russ. 314.

A testator gave 1000 pounds to his natural son, and if he died under twenty-one, then that sum and the residue to go to the testator's family; and he gave the residue to his natural son to be applied as above directed; the son died under twenty-one. Held, that the 1000 pounds was part of the residue, and did not pass to the testator next of kin as a legacy. 4 Sim. 21.

The general rule is, that a lapsed legacy of chattels passes under a general residuary bequest; but the rule does not apply where the residuary bequest is of a particular fund or description of property, or other certain residuum. 1 Hill's Chanc. 97; 2 Dessauss. 138; 1 Russ. 146, 276; Durow *v.* Motteux, 2 Roper on Legacies 453; Kennell *v.* Abbott, *Ibid.*; Cambridge *v.* Rous, *Ibid.* 454; Bland *v.* Lamb, *Ibid.* 456.

Holt, for the appellees.

It is believed that no interpretation of the will, however tortured or far-fetched, can give three slaves to the residuary legatee.

[Vick's Ex'or, Appellant, *v.* M'Daniel *et al.*]

In interpreting wills, " the intention of the testator is the first and great object of inquiry, and to this object, technical rules are made subservient—that intention when ascertained must govern, unless it conflict with some principle of law, or of public policy.   The inclination of courts in modern times, is to allow men to make their own wills, and not to make wills for them by virtue of arbitrary rules.   In the present case, the intention of the testator, as clearly and emphatically expressed, was to emancipate the slaves in question, and have them transported, either to the state of Ohio or Indiana.   That intention, however, is at war with the fundamental policy of the state, and the courts will not enforce it.   But while they will not enforce it, they will not violate it, by giving the slaves to one as his absolute property, who was selected by the testator, as the instrument to carry his purposes of manumission into effect.   The words, " the remainder of my estate not herein disposed of," were, it is well known, designed by the testator to apply to three slaves—for he had in a previous part of the will disposed of them, by declaring them emancipated.   Could he have intended to bequeath as slaves, those, whom in the preceding clause of the will he had manumitted?   The rule of construction would be as arbitrary and absurd, which under the mocking pretence of executing the will, should give to bondage, those whom that will had in words emancipated.   In Green *v.* Dennis, 6 Conn. Rep. 292, the devise was held void, because the devisee was incompetent to take, and yet though the devise was void from the beginning, the heir was preferred to the residuary devisee, on the ground that the testator never intended that the specific devise, which was void, should fall into the residuum.   The residuary devise was of " the rest and residue of the estate therein disposed of,"—almost the same words used in the will now under examination.   That decision was rested upon a principle unassailable, and which should never be departed from —that the residuary devisee or legatee, shall not by any forced or artificial rules be allowed to claim property, which it is clear the testator never intended to give him.   And that principle, if applied, must be decisive of this controversy.   The law will give these slaves to the heirs, because John Vick has not given or intended to give them to any one else, which is reason enough.

" Devises by implication are sustained only upon the principle of carrying the testator's intention into effect." 3 Paige, 1. If this bequest, as construed by defendant, were carried into effect, it would be an acknowledged violation of the testator's intention, by making slaves of those whom he intended to free. The decree of the chancellor should, it is believed, be fully affirmed.

Mr. Justice TROTTER delivered the opinion of the court.

The general rule upon this subject seems to be as well settled as any in the law. A residuary legatee will be intended to take whatever may by lapse, invalid disposition, or other casualty, fall into the residue after the date of the will. 2 Roper on Legacies, 453. The same rule is laid down in 2 Maddock, 94, where it is stated upon a review of all the authorities upon the subject, " that a residuary bequest carries not only every thing not disposed of, but every thing that is ill disposed of, and every thing that in the event turns out, not to be disposed of, whether by a partial revocation of a will, a lapse, or by a gift being void.

The case of Durour *v.* Motteux, 1 Vesey Sen. 320, is, in principle, precisely the case under consideration. Motteux devised all his real estate to trustees, to sell and dispose of the whole with his personal estate, for the payment of his debts and legacies.

He then gave 1200 pounds to be invested in the purchase of freehold lands for charitable uses, &c. This legacy being void by the statute of mortmain, the question was, whether it should go to the heir, or residuary legatees; and Lord Hardwicke decided, that it belonged to the latter. He says that the land having been directed to be turned into money is to be treated as such, and having thus showed it to be a personal bequest, goes on to remark, " that the court cannot say, because one of the personal legacies is void, that for that reason, contrary to the express will, he intended to die intestate. Giving the residue over, includes every thing. Let it fall in, by reason of that legacy being void."

In Leake *v.* Robinson, 2 Merivale, 392, the same principle is recognised and enforced. After deciding that the bequests to the grandchildren in that case were wholly void, the court proceeded to the inquiry whether they belong to the heir or residuary legatee. It is then said, that every thing which is ill given

[Vick's Ex'or, Appellant, *v.* M'Daniel *et al.*]

by the will, falls into the residue, and that it must be a very peculiar case indeed in which there can be at once a partial intestacy and a residuary clause. It is immaterial how any part of the property is undisposed of, whether by the death of a legatee, or the illegality of the bequest. Either way it is a residue. It may in words have been before given, but if not effectually given, it is undisposed of and included in the denomination of residue. A testator supposes, that each part of his will is to take effect, and consequently, cannot be said to have any intention to include in his residue, any thing he has before given. Hence, we take it that the rule of intention, which is cardinal in the construction of wills, where there is any doubt upon the language of them, and which is so strenuously invoked in this case by the counsel for the appellees, cannot here be the criterion. It is evident that the testator did not intend that the slaves in question should belong either to the heirs or the residuary legatee. He intended that they should be emancipated—that intention is defeated by the operation of our fundamental law, and the settled policy of the state, and the question of ownership must be determined by the established rules in such cases. The limitations of a particular bequest, and those of the residue, may be quite incongruous, and yet what is not disposed of will fall into the residue. Here, express intention in favor of either heir or residuary legatee is out of the question, yet the courts refuse the bequest to the heir, on the ground that it is contrary to the express will of the testator, to support those he intended to disintestate as to that bequest. It is, therefore, thrown into the residue. " And this rule will not be made to yield to the probability that the testator would have given the illegal and void legacy to others. That would be to undertake to make a will for the testator, contrary to established rules. Gore *v.* Stevens, 1 Dana S. Rep. 206. We have not been able to find one case in which this principle has been departed from.

In devises of land, a different rule, it is true, prevails; the distinction is noticed in the several cases to which we have referred, and it is well settled, that " real estate not disposed of, or ill disposed of, goes to the heir." The reason of this distinction appears to exist in the desire of the courts to prevent the resi-

29*

duum from going to the executor in one class of cases, and to the benefit of the heir in the other. 1 Dana Rep. 206. This distinction must have decided the case of Green v. Dennis, 6 Conn. Rep. 292, which is relied on by the counsel for the appellees. We have not been able to find the book, but it was evidently a devise of real estate, and as the devisee was incompetent to take, the court very properly determined it to belong to the heir instead of the residuary devisee.

An objection is raised against the claim of John W. Vick as residuary legatee, on the ground that Burwell Vick who has the life estate in the slaves, by claiming as heir against the will, has removed all benefit in the residue clause, and, therefore, that, during his life, distribution should be made. Burwell Vick is a lunatic, and cannot be prejudiced by any step taken by another; the court feel bound to regard his rights as they arise under the will, and not suffer them to be impaired by any mistake which others may have committed as to the nature or extent. They do not conceive the bringing this suit any renunciation of his rights under the will. It cannot affect the rights of John W. Vick, because he is the trustee for Burwell Vick, and is invested with the entire control and management of the property during his life. The property could only be taken from him to subserve the purposes of the trust. The bill does not go upon any ground of complaint against the appellant for the management of this trust.

We are, therefore, of opinion, that the appellees cannot recover the slaves in controversy, and that the decree of the chancellor should be reversed, and the bill dismissed with costs to the appellant.