# Kentucky Coal Lands Company, et al. v. Baker.

(Decided October 16, 1913).

## Appeal from Leslie Circuit Court.

1. Taxation—Forfeiture for Non-payment of Taxes Under Section 4076-b, Ky. Stats.—Right of Redemption.—A claimant of land who has a title upon which he could maintain an action in eject-ment may redeem land forfeited for the non-payment of taxes under the provisions of Sec. 4076-b of the statute, although he is not named as a defendant in the forfeiture suit brought by the Commonwealth.

2. Taxation—Effect of Judgment Allowing a Claimant of Land to Redeem—Collateral Attack on.—In a suit by the Commonwealth to forfeit land for the non-payment of taxes, a judgment of redemp-tion, as authorized by the forfeiture act, reciting that the person allowed to redeem had the fee simple title to the land, is conclu-sive of the question that he had such title in another suit between him and other parties involving his title to the land, as the judg-ment of the court having jurisdiction of the parties and the subject matter cannot be attacked in a collateral proceeding.

3. Taxation—Construction of Subsection Six of Section 4076-b of the Statute.—Under subsection six when land is forfeited by the judg-ment of the court for the non-payment of taxes, and is not re-deemed as provided in the act, a judgment of forfeiture has the effect of transferring the title to the land forfeited to that party who has been in the actual adverse possession of the land for five years next preceding the forfeiture judgment, and who has paid the taxes thereon for that period of time.

4. Landlord and Tenant—Attornment by Tenant to a Stranger For-bidden.—A tenant in possession of premises cannot attorn to a stranger or lease the premises from a stranger or in any manner or way renounce his allegiance to or set up a title hostile to his landlord without first obtaining the consent of the landlord or re-nouncing his tenancy by removing from the leased premises.

5. Landlord and Tenant.—Where a tenant from year to year whose term expired in January, 1909, took a lease from a stranger in the fall of 1908 for the year 1909, and under this lease occupied the premises in the same manner that he had been occupying them under the landlord, he continued in 1909 to be the tenant of the landlord under whom he had entered in 1908, as he did not obtain the consent of the landlord to lease from a stranger or renounce his tenancy by removing from the leased premises.

6. Landlord and Tenant—Severance of Relations.—Where a tenant had remained in possession of land for several years under an-nual leases and in 1909 the landlord refused to lease him the land for that year, but leased it to another party, this did not have the effect of severing the relation of landlord and tenant when the

tenant continued to remain on the premises, although the tenant claimed to be occupying the premises in 1909 under his lease from a stranger for that year.

J. C. JONES, A. T. W. MANNING, D. K. RAWLINGS and LEWIS & LEWIS for appellants.

CLEON K. CALVERT, H. D. FAULKNER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This action in ejectment was brought in February, 1912, by the appellee, Mat Baker, against the appellants, the Kentucky Coal Lands Company, and Hiram Napier, its tenant. In its answer, after denying title in Baker, the company for itself and Napier, set up various defenses, which, so far as seem pertinent to a decision of the case, will be noticed in the course of the opinion.

The litigation involves the title to and possession of a tract of land containing about one hundred acres, for which William Begley obtained a patent in 1834. In 1840 William Begley sold and conveyed the land to Edward Begley, who died intestate about 1864 leaving surviving him six children, who by inheritance came into the title.

The appellee, Baker, asserts title to this land and the right to the possession of it under conveyances from some of the Begley children and under proceedings had in and a conveyance made by the circuit court of Leslie County in a suit brought by the Commonwealth to forfeit this land for non-payment of taxes.

The coal company exhibited a paper title to a large body of land, including the land in controversy, tracing back to the Commonwealth, but it is conceded that the patents under which it asserts title to the land are junior to the patent issued to William Begley under which Baker claims. This being the condition of the record, the coal company does not depend on its paper title but insists that it is entitled to the land by virtue of its payment of taxes and adverse holding under the provisions of section 4076b of the Kentucky Statutes.

In 1908 a suit was brought in the Leslie Circuit Court by the Commonwealth against the heirs of Edward Begley, known and unknown, for the purpose of forfeiting this land for the non-payment of taxes under

the act which is embraced in the section of the statute mentioned. This suit was brought by the Commonwealth under section 4076d, which is section three of the act, and there was named as defendants the heirs of William Begley so far as they were known, "and other owners and claimants of said land under said William Begley whose names, if any, are unknown." Neither Mat Baker nor the coal company were parties to this suit. The defendants filed an answer, which was replied to, and thus the matter stood until the February term of the court in 1911. At this term of the court the defendants withdrew their answer and confessed the allegations of the petition, and thereupon a judgment was entered forfeiting all title, interest and claim of the defendants to the Commonwealth. The judgment further provided that the cause should be kept on the docket for the purpose of giving the defendants time to redeem the land, as provided by the act.

At the May term of the court, 1911, which was the term succeeding the term at which the judgment of forfeiture was entered, a judgment in conformity with section 4 of the act was entered reciting in substance that Mat Baker as purchaser from the Begley heirs of three-sixths of the land forfeited had filed his petition and asked to be allowed to redeem the land. The judgment further recited that the formalities of redemption required by the act were dispensed with and Baker was permitted to and did pay to the sheriff the full amount of tax, cost and penalties due on this three-sixths of the land. It is further recited:

"That the said Mat Baker, as vendee of the said Ace Begley, Sallie Collins, A. B. Dixon, Jr., Cynthia Dixon and Sallie Sizemore, is now the legal owner in fee simple of an undivided three-sixths interest in the tract of land mentioned and described in the petition and judgment of forfeiture herein, and described in this judgment.

"It is, therefore, adjudged by the court that the judgment of forfeiture as to the undivided three-sixths interest in said tract of land, which judgment of forfeiture was rendered and entered at the regular February term, 1911, of this court herein, be and the same is now satisfied and discharged, and the title of the said undivided three-sixths interest in said tract of land is here and now re-transferred from the Commonwealth

of Kentucky, and all other parties to this suit, to the said Mat Baker, and he is now adjudged to hold the said three-sixths interest in said tract of land, discharged and free from all taxes and claims for taxes upon the part of the Commonwealth of Kentucky, or any other person, for and during all the time heretofore elapsed and up to and including the date of entry of this judgment.''

The record in the case before us further shows that, previous to the entering of this judgment, allowing Baker to redeem three-sixths of the land, he had purchased from the Begley heirs named in the judgment the three-sixths interest he was allowed to redeem. It is upon these purchases from the Begley heirs and this judgment of redemption that Baker relies for title to an undivided three-sixths of the land in dispute.

The coal company insists that neither the purchase of these interests or the judgment of redemption invested Baker with title to the three-sixths claimed by him, and we will first dispose of this feature of the case.

The forfeiture act provides in section four, which is section 4076e of the statute, for the redemption of land forfeited to the Commonwealth, and recites that before or during the term of the circuit court next succeeding the term at which the forfeiture judgment was entered, any of the defendants in privity with the title so forfeited may redeem the same in the manner pointed out in the section by the payment of taxes and penalties. It further recites:

''That no person except a defendant, and no defendant except as herein provided, shall be allowed to purchase back from the Commonwealth the title so forfeited to, and invested in it, except such defendant as may, but for such forfeiture, establish in such proceeding a title thereto in himself upon which he could maintain an action of ejectment.''

As before stated, Mat Baker was not named as a defendant to this forfeiture action, but we do not construe section four as limiting the right to redeem to the persons who are named in person as defendants in the forfeiture suit. The statute provides that the forfeiture suit shall be instituted ''in the name of the Commonwealth of Kentucky as plaintiff against said tract of land and the owners or claimants of said land as defendants, naming them, if their names are known to him, and if their names are unknown to him, designating

them as the unknown owners and claimants thereof, for
the purpose of declaring the title or claim of said de-
fendants forfeited to this Commonwealth, and selling
same.''

And we think that any person who has or claims an
interest in the land forfeited and who could maintain an
action in ejectment upon his title, may redeem the land.
The right of redemption is allowed not only to the named
defendants but to the unnamed defendants who have
such interest and title in the land as we have described.
In other words, Baker having an interest and title in
the land forfeited, would come under the description of
one of the unknown defendants proceeded against, and
have the right, upon exhibiting such title as would
authorize him to maintain an action in ejectment, to re-
deem the land. The statute was not designed to deny
the right of redemption to the owner of the land merely
because he was not named in person as a defendant.
The real owner of the land who has such title as author-
izes him to redeem it may be permitted to do so, al-
though he is not named in person as a defendant.

It is said, however, that Baker did not have, at the
time he redeemed this land, such title as would author-
ize him to maintain an action in ejectment, and, there-
fore the statute did not permit him to redeem it. But
we do not think it necessary to go into the question of
Baker's title to the land redeemed by him. The judg-
ment of the court in the forfeiture suit, recites that
Baker was the owner in fee simple of three-sixths of
the land and we will accept that finding of the court as

The court entering the judgment had jurisdiction of
the parties and the subject matter, and its finding of fact
cannot be impeached in this litigation between Baker
and the coal company.

Having this view of the matter, our conclusion is
that, under and by virtue of this redemption judgment,
Baker, in the case before us, shows himself to have the
title to and the right to the possession of three-sixths of
the land in dispute. The record in the forfeiture case
further shows that after the judgment of redemption
was entered allowing Baker to redeem three-sixths of
the land, that the remaining three-sixths was sold as
provided in section four of the forfeiture act, and at
this sale was purchased by Ace Begley, who owned an
interest in the land and was one of the named defendants

in the forfeiture suit. It further appears that Begley assigned his purchase to Mat Baker, and that upon the payment of the taxes, costs and penalties due and assessed against this three-sixths interest, a deed was made by the court conveying it to Mat Baker. It is upon this deed that Baker relies for title to the other three-sixths of the land, but, in our opinion, this conveyance did not have the effect of vesting in Baker the title attempted to be conveyed by the commissioner's deed. Section 6 of the act, which is section 4076g of the statute, reads:

"All title and claim proceeded against under this article and forfeited to, and vested in, the Commonwealth and not purchased back by the owner or claimant thereof, as authorized in section four hereof, whether such forfeiture be for past delinquencies or for future delinquencies as authorized under section ten hereof, shall be, and is hereby, transferred to, and vested in, any person for so much thereof as such person, or those under whom he claims, has had the actual adverse possession for five years next preceding the judgment of forfeiture, under claim, or color of title, derived from any source whatsoever, and who, or those under whom he claims, shall have paid taxes thereupon for the five years in which such possession may have been or may be held; and in those in privity with such person, his heirs, representatives or assigns, as to the mineral or other interests or rights in or appurtenant to such land."

It will be noticed that under this section the title to land forfeited and not redeemed is transferred to and vested in that person who has had adverse possession of the land for five years and who has paid the taxes thereon for that period. The coal company asserts that it was in the adverse possession of this land for five years next preceding the forfeiture judgment and had paid all taxes thereon for that period of time, and, therefore, the judgment of forfeiture transferred and vested in it the title to the land not redeemed. It is admitted in the record that the coal company paid the taxes upon this land for more than five years next before the judgment of forfeiture was entered by paying the taxes upon the large body of land it owned, which included this land in controversy. It is, however, disputed that it was in the adverse possession of this land for five years next preceding the judgment of forfeiture, and to this question we will now address ourselves.

It appears that in 1903 the coal company leased by written contract the whole of this land in controversy, that is, the Begley patent, to Hiram Napier, for the year ending January 1, 1904, and that Napier under this written lease took actual possession of the land. It is further shown that the same character of lease was entered into between the coal company and Napier for the years 1904, 1905, 1906, 1907 and 1908, the last lease expiring on January 1, 1909. In 1909 the coal company leased the land to one Carnahan and declined to lease it to Napier; but again in 1910 and 1911 it leased it to Napier under leases similar to the leases of 1903-1908. It was necessary, however, to enable the coal company to avail itself of the provisions of section six of the act that it should have been in the actual adverse possession of the land for the year 1909. Without that year it would not have been in the actual adverse possession of the land for five years next preceding the judgment of forfeiture entered in 1911. Whether it was in the actual adverse possession of the land in 1909 turns on the question whether Napier was its tenant during that year. There is no dispute about the fact that Napier actually lived on this land in 1909 at the same place and in the same manner that he had lived on it during the years 1903-1908, but it is contended that in 1909 he occupied the land as the tenant of Mat Baker and not as the tenant of the coal company.

It appears from the record that in the fall of 1908 Napier learned that the coal company would not lease the land to him in 1909, and thereupon he leased it for that year by a written contract from Mat Baker. The coal company, however, had no notice of this lease between Napier and Baker until some time in the fall of 1909. Napier did not notify it that he was going to lease or that he had leased the land from Baker, nor was the lease made with the consent of the coal company. In 1909, under his lease from Baker, Napier lived in the same house in which he had lived for six years under his leases from the coal company, and used and occupied the premises in the same manner as he did under his leases from it. In his occupancy and control of the leased premises there was nothing to indicate to the coal company that he had renounced his tenancy to it or that he was not holding over as its tenant under his 1908 lease, nor did the coal company in any manner interfere with his possession in 1909.

It has been settled in numerous cases that a tenant in possession of premises cannot attorn to a stranger or lease the premises from a stranger, or in any manner or way renounce his allegiance to or set up a title hostile to his landlord without first obtaining the consent of his landlord or renouncing his tenancy by removing from the leased premises. Kentucky Statutes, section 2298; Turner v. Thomas, 13 Bush, 518; Chambers v. Pleak, 6 Dana, 426; Payne v. Vandever, 17 B. Monroe, 14; Blue v. Sayre, 2 Dana, 213; Trabue v. Ramage, 80 Ky., 323; King v. Hill, 32 Ky. Law Rep., 1192; Drane v. Gregory, 3 B. Mon., 619.

There are some exceptions to this general rule, but as the facts of this case do not bring them within any of the exceptions, it is not necessary to extend this opinion by a reference to them. Conceding the principles of law stated to be correct, it is argued by counsel for Baker that when the coal company leased the land to Carnahan for 1909 and refused to lease it to Napier for this year, this was in effect the same as if Napier had openly renounced his tenancy. In other words, it is said that the severance of the relation of landlord and tenant by the act of the coal company in renting the land to another tenant had the same effect as if the tenancy had been severed by Napier notifying the coal company that he did not intend to occupy the land as its tenant in 1909. We do not think so.

If Napier, when he rented the land from Baker, had actually removed all of his possessions from the leased premises and had re-entered in 1909 as the tenant of Baker, we would say that this conduct on the part of Napier amounted to an open renunciation of his tenancy under the coal company and put it on notice that he had severed the relation of landlord and tenant and intended to return to the land as the tenant of another claimant to the title. But Napier did not do this. In remaining on the land in 1909 without having obtained the consent of the coal company to renounce his tenancy or without having renounced it by removing his possessions from the leased premises, he continued on the land as a tenant by sufferance of the coal company under section 2295 of the Kentucky Statutes, reading:

"If, by contract, a term or tenancy for a year or more is to expire on a certain day, the tenant shall abandon the premises on that day, unless by express contract he secures the right to remain longer. If, with-

out such contract the tenant shall hold over, he shall not thereby acquire any right to hold or remain on the premises for ninety days after said day, and the possession may be recovered without demand or notice, if proceedings are instituted within that time. But if proceedings are not instituted within said time, then none shall be allowed until the expiration of one year from the day the term of tenancy expired; and at the end of said year the tenant shall abandon the premises without demand or notice, or stand in the same relation to his landlord that he did at the expiration of the term or tenancy aforesaid; and so from year to year, until he abandons the premises, is turned out of possession, or makes a new contract.''

We, therefore, conclude that in 1909 Napier was occupying the land as the tenant of the coal company, and this being so, it was in the actual adverse possession of the land for five years next preceding the judgment of forfeiture. This adverse possession of the land, together with the payment of taxes, had the effect of transferring to the coal company, as provided in section six of the act, the title forfeited to the Commonwealth and not redeemed. This being so, the commissioner's deed conveying to Baker the three-sixths interest forfeited and not redeemed was of no effect. Before this deed was made the title to the land conveyed by it had been under the statute referred to, transferred to and vested in the coal company.

Under the whole case our conclusion is that Baker is entitled to an undivided three-sixths of the land and the coal company to an undivided three-sixths of it. The judgment is reversed, with directions to proceed in conformity with this opinion.