## Arthur v. Humble.

(Decided September 27, 1910).

### Appeal from Wayne Circuit Court.

1.  Land—Title—Reputation.—Title to land as between private individuals is not to be determined by reputation.

2.  Evidence—Transaction With One Since Deceased.—A party is not competent to testify for himself concerning a statement or transaction with one who was dead when the testimony was given.

3.  Possession—What Constitutes.—The fact that a claimant of land and his vender living upon an adjoining tract, sporadically exercised such acts of ownership as cutting timber and the like thereon, does not amounnt to a reduction of the land to their possession.

4.  Same—Indefinite Claim.—Although a man may be in the actual adverse possession of his farm in every sense of the term, yet he cannot by merely claiming all the country around about him, or even a selected part of it, thereby reduce it to actual possession, and ripen a title to it by virtue of the statute of limitation.

5.  Squatter—Abandonment—Seizure by Stranger—Coupling Subsequent Possession.—When a squatter on land left it, it was an abandonment of his possession, and whatever benefit accrued under it could not be seized upon by a stranger in title to him, nor be coupled by the stranger to his subsequent possession so as that fifteen years of the two combined could oust the title of the true owner.

6.  Title by Possession—Adverse Holding 15 Years.—To acquire title to land by possession, the entrant must have notoriously entered and continuously and adversely occupied it for 15 years, so that every day his possession would have been a trespass against the

real owner, and to have held adversely he must have claimed to be the owner to a well marked or natural boundary, else his possession would be limited to his fence.

7. Sale of Land—Memorandum in Writing Signed by Grantor.—To constitute a sale of land there must be a conveyance or some memorandum in writing signed by the grantor, or the transaction is void so far as it may be claimed as a conveyance.

CRESS & CRESS for appellant.

JOE BERTRAM and HARRISON & HARRISON for appellee.

OPINION OF THE COURT BY JUDGE O'REAR— Reversing.

This suit involves the title to a tract of land in Wayne county claimed by each of the parties, appellant H. B. Arthur, who was plaintiff below, and appellee S. L. Ramsey, who was the principal defendant below. Ramsey had sold to Humble and Russell the timber growing on the land. Arthur sued them for the conversion of the timber, asserting that he owned the land, and that the defendants Humble and Russell, knowing that fact, willfully and fraudulently cut and removed the timber, and converted it into staves and lumber. Ramsey as claimant, was permitted to intervene and defend for his vendees. So the principal and first question submitted to the jury was that of title to the land. It does not appear that there was any patent issued embracing this land prior to September 5, 1907, when appellant Arthur procured a patent issued to him for the land upon a survey made April 18, 1907. The land was uninclosed woodland, abutting on all sides upon previously patented land. At one time, and prior to the civil war, a free negro by the name of Jerre Langford built a cabin on the boundary, and made a clearing of a few acres, and lived there some years. Afterward other parties set a mill on the land, and used it to some extent. Langford removed from the land many years ago, and his cabin was torn down and the clearing abandoned to grow up in forest again. Appellant claims title under his father, who bought from Jones Harris an adjoining farm on which appellant's father and afterward appellant have lived for many years. They believed the Jones Harris deed covered the land now in dispute, which had come to be known as the "Free Jerre" tract, but it did not. Appellant and his father claimed the "Free Jerre" tract, and occasionally exercised some acts of ownership over it.

Dr. Gann at one time owned the land on which appellee Ramsey now resides. Gann bought a part of his tract from Jerre Langford, but not the tract in dispute. At least the conveyance does not purport to nor does it in fact include the land in dispute. Dr. Gann sold and conveyed his farm to Ramsey and put him in possession. That farm adjoined the "Free Jerre" tract of land for a rod or so. Appellee Ramsey thought that he was buying the "Free Jerre" tract and believed that his conveyance covered it, but it did not. Occasionally appellee also exercised acts of ownership over the land, such as cutting timber from it and the like—about such acts as Arthur was exercising at irregular intervals over the same land. In 1907 in running out their lines the parties discovered that the deed of neither covered the disputed zone.

Arthur at once procured a land warrant and had this land entered and surveyed, and a patent to issue as stated. Ramsey also attempted to have it entered and surveyed, but upon being informed of Arthur's previous action seems to have abandoned his attempt. In this suit Ramsey set up title by adverse possession. The issue was joined on that plea.

The evidence disclosed the foregoing facts in substance. In addition the trial court let witnesses for appellee state, over appellant's objection that the people of the neighborhood regarded the land as belonging to appellee; and let appellee testify, also over objection, that he bought this land from Dr. Gann, who represented to him that it belonged to his farm, and was in the body conveyed by the deed. Dr. Gann was dead at the time of the trial. Both classes of evidence just alluded to were erroneously admitted. Title to land as between private individuals is not to be determined by reputation. Nor was appellee competent to testify for himself concerning a statement or transaction with one who was dead when the testimony was given. (Paragraph 606, Civil Code.)

The court instructed the jury as follows:

"1. You will find for the plaintiff in this case, unless you shall believe from the evidence that prior to the survey made by the plaintiff the land from which the timber was cut and removed by the defendant had been previously surveyed or patented or if you further believe that from the evidence that at the time that the defendant, S. L. Ramsey, purchased the lands included

in the deed from Dr. Gann to S. L. Ramsey the land in dispute was included in said purchase and was omitted from the deed by mistake or oversight and further believe from the evidence that it was the intention of Gann and Ramsey to include said land in said deed and further believe from the evidence that the land in dispute was joined to and connected with lands included in said deed and further believe from the evidence that Dr. Gann put the defendant in possession of all the said land including the land in dispute and further believe from the evidence that for 15 years prior to the bringing of this action by the plaintiff the defendant, S. L. Ramsey had been in actual, open, notorious, continuous, adverse possession of the land in dispute claiming the same to well known and well defined boundaries and if you believe either of the latter state of cases, you will find for the defendants.''

''2. The court further instructs the jury that if you do not believe that the land in dispute had been previously surveyed or patented by some other person before plaintiff had said land surveyed or that the land in dispute was not purchased from Dr. Gann by the defendant, Ramsey, nor was intended to be included in the deed from Gann to Ramsey then in either event you will find for plaintiff.''

''3. If your finding be for the plaintiff you will find for him such a sum in damage as you shall believe from the evidence will reasonably compensate him for the timber cut and removed from the lands in dispute and you will find the damage, if any, to be the market value of the timber at the time it was so cut and removed from the premises, provided your whole finding shall not exceed the sum of $946.90.''

The instructions are erroneous. There was no evidence of a continuous adverse possession of this land by anybody for fifteen years. The fact that Ramsey and his vendor, living upon an adjoining tract, sporadically exercised such acts of ownership as cutting timber and the like did not amount to a reduction of the land to their possession. Nor did they or either of them claim the land under any color of title. It was a mere naked claim, unaccompanied by an actual possession, and not even limited by bounds, set off by such monuments as are required to put the real owner upon notice. Although a man may be in the actual adverse possession of his farm in every sense of the term, yet he can not by merely claiming all

the country around about him, or even a selected part of it, thereby reduce it to actual possession and ripen a title to it by virtue of the statutes of limitation. As a matter of fact that was precisely what appellant Arthur was doing at the same time. The result, if allowable, would have been that two bodies occupied the same space at the same time—an impossibility in law as well as in fact.

So far as the evidence in this record shows, the land had never been entered, surveyed, or patented prior to 1907. Free Jerre's possession appears to have been that of a squatter. Although he might have perfected a title even against the Commonwealth, had he remained there long enough, he did not. When he left, it was an abandonment of his possession, and whatever benefit accrued under it could not be seized upon by a stranger in title to him, nor be coupled by the stranger to his subsequent possession so as that fifteen years of the two combined could oust the title of the true owner. When the first occupant abandoned the premises, the complete legal right of entry was in the true owner—the Commonwealth, so far as is now shown. Any subsequent entrant must have notoriously entered, and continuously and adversely occupied the land for fifteen years so that every day his possession would have been a trespass as against the real owner. To have held adversely, he must, too, have claimed to be the owner, and claimed to a definite, and well marked or natural boundary—else his possession would have been limited to his fence. There were no such acts in this case, save by Jerre Langford, and they did not continue for fifteen years. It is true evidence was admitted, erroneously, that Jerre Langford had sold this land to so and so, and he to appellee's grantor. But sales of land are not thus proven. There must have been a conveyance, in writing, or some memorandum in writing, signed by the grantor, or the transaction was void in so far as it may be claimed to have been a conveyance. Jerre Langford could no more sell his "possession" by parol than he could his land. Indeed he could not sell his possession at all, save as it was an incident of his title. As there was nothing to pass his title, the transaction alluded to, if it occurred, was void. But there was not even competent evidence that the transaction ever took place. The testimony offered on this score was mere hearsay, a tradition. Upon the rec-

ord as it stands, appellant had the legal title to the land. The court should have so instructed the jury, and confined them to awarding such damages for the timber taken and converted as it was reasonably worth in that market when taken (there not being evidence of fraud or wanton willfulness in the taking of it, but it having been done under an honest though mistaken belief as to title), and interest in the discretion of the jury.

Reversed, and remanded.