## Thornbury v. Virginia Iron, Coal & Coke Company.

(Decided November 24, 1925.)

(Rehearing Denied, with Modification, November 23, 1926.)

### Appeal from Pike Circuit Court.

1. Adverse Possession—Entry on Land Outside Prior Patent and Sur-
vey and Adverse Holding to Well Marked Boundary Necessary to
Acquire Title.—To acquire title by adverse possession, it was nec-
essary that one obtaining survey, conflicting with prior survey in-
ferior to conflicting patent, or his grantee, enter on land outside
prior patent and survey, and hold it adversely to well marked
boundary, where neither last survey nor deed described land so as
to constitute well defined boundary.

2. Mines and Minerals—Owner of Surface Estate Does Not Acquire
Title to Minerals by Exclusive, Continued Possession of Surface
Merely.—Owner of surface estate, severed from mineral estate,
does not acquire title to minerals by exclusive and continued
occupancy and enjoyment of surface merely.

3. Mines and Minerals—Possession of Mineral Owner, Claiming
through Surface Owner, Not Adverse, if Latter Does Not Claim
and Hold to Well Defined Boundary.—As rights of mineral owner,
claiming possession through surface owner remaining in posses-

sion after severance of mineral estate, can rise no higher than latter's rights, mineral owner's possession is not adverse, if surface owner does not claim and hold to well defined boundary.

4. Mines and Minerals—Mineral Owner's Holding Not Made Adverse by Deed from Surface Owner, Not Holding to Well Defined or Well Marked Boundary.—Where surface owner, at time of conveying minerals, did not hold to well defined or well marked boundary, deed did not define boundary, so as to make grantor's holding adverse to others, and hence did not make grantee's holding adverse.

5. Adverse Possession—Intermittent Cultivation Held Not to Establish Adverse Possession, Within Conflict Between Surveys, though Survey Itself was Well Defined.—Possession of land within conflict between two surveys, by claimant under one of them and his predecessor, held not to have continued long enough to ripen into good title, though survey itself was well defined boundary, where interference was never occupied by either, or any one for them, and land was not inclosed nor regularly cultivated annually for statutory period.

6. Champerty and Maintenance—Deed of Mineral Lands Not Champertous, as Mineral Owner's Holding was Not Adverse.—As mineral owner's holding under claim of possession through surface owner, not claiming and holding to well defined boundary, was not adverse, deed to third party, claiming minerals as within tracts included in deed, was not champertous.

7. Judgment—Judgment Operates as Estoppel in Different Cause of Action Only as to Points or Questions Actually Litigated and Determined.—Judgment on merits is conclusive, in second action on same claim or demand, as to every ground of recovery or defense which might have been presented, but, where second suit is on different claim or cause of action, former judgment operates as estoppel only as to points or questions actually litigated and determined; one having distinct causes of action against another not being required to join them merely because they could have been properly joined.

8. Judgment—Test of Whether Second Suit is for Same Cause of Action is Whether Same Evidence will Support Both.—Best test of whether suit is on same cause of action as former suit, wherein judgment set up as bar was recovered, is whether same evidence will support both.

9. Judgment—Judgment, in Action for Minerals in One of Two Tracts Held Not Bar to Suit for Minerals in Other Tract.—Judgment, in action to recover minerals in one of two tracts, parts of which plaintiff claimed were within bounds of his deed, held not bar to action for minerals in other tract some distance away, source of title to which was different, as evidence in neither action would have established or disproved title to tract involved in other.

DAUGHERTY & BARRETT, STRATTON & STEPHENSON and MOORE & CHILDERS for appellant.

HARMAN, FRANCIS & HOBSON for appellee.

Opinion of the Court by Judge Clay—Reversing.

In this action by James Thornbury against the Virginia Iron, Coal and Coke Company to quiet his title to the minerals in a tract of land lying on the head of Laurel fork of Fed's creek in Pike county, the petition was dismissed and Thornbury has appealed.

Appellant has title of record to the disputed boundary through the Ephraim Hackney 195 acre survey of October 19, 1870. Appellee claims title by adverse possession, by champerty and by virtue of a former adjudication between the parties. To sustain its claim of adverse possession and champerty it relies upon the possession of John Mutter and Henry Miller. It appears that Stephen Rowe obtained a patent in the year 1836 and that this patent conflicts to a small extent with, and is superior to, the Ephraim Hackney survey. It also appears that on December 2, 1870, John Mutter obtained a survey for 200 acres, which also conflicts with, but is inferior to, the Ephraim Hackney survey. After obtaining this survey John Mutter conveyed to Henry Miller by deed dated December 13, 1877, "the following tract or parcel of land lying on Laurel fork of Fed's creek, commencing at the big rock running up the creek on right-hand side of said creek to the division line between Polly Mutter and Susan Keen land, thence running up the right hand fork of the Laurel fork to the upper end of my land, including all I own on said fork, containing 150 acres, more or less, with its appurtenances." On September 28, 1887, Henry Miller and wife conveyed to John J. Stewart, trustee, the minerals in a tract of land, the boundary of which is accurately described in the deed and covers the land in controversy.

By amended petition appellant disclaimed title to the conflict between the Stephen Rowe and the Ephraim Hackney survey, and the land within the conflict has been eliminated from the case.

To acquire title by adverse possession to any of the land lying outside of the John Mutter patent it was necessary for Henry Miller, or those through whom he claims, to enter upon the land outside of the Rowe and Mutter patents and claim and hold the same adversely to a well defined or well marked boundary. The deed which Mutter executed to Miller does not describe the land in such a way as to constitute a well defined boun-

dary. That being true, it was necessary to show that they held and claimed to a well marked boundary. While there was some proof that the boundary along the ridge to which, it is alleged, they claimed was marked here and there, the markings are too few and far apart to constitute a well marked boundary. But the point is made that the deed conveying the minerals to Stewart, trustee, accurately described the land and that Miller's subsequent holding of the surface was to a well defined boundary and operated for the benefit of the grantees of the minerals. It is true that where there has been a severance of the mineral estate from the surface estate the owner of the surface estate does not acquire title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface merely, Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369, and that in stating the rule it is sometimes said that the owner of the surface holds possession of the minerals in the land as trustee for the legal owner. Foxwell v. Justice, 191 Ky. 749, 231 S. W. 509; Eli v. Trent, 195 Ky. 26, 241 S. W. 324. Whether this means anything more than that the mere possession of the surface by the owner of the surface is never adverse to the owner of the minerals, we need not decide. One thing is certain and that is that where after severance of the mineral estate the surface owner remains in possession, the rights of the mineral owner who claims possession through him can not rise higher than his rights. Therefore, if the surface owner's possession is not adverse as to third parties because he does not claim and hold to a well defined boundary, then, for a like reason, the possession of the mineral owner is not adverse. As before stated, Miller, at the time of the conveyance of the minerals to Stewart, trustee, did not hold to a well defined or well marked boundary, nor has the boundary been marked since that time. It is at once apparent that color of title must be acquired through someone else, and can not be acquired by the act of the claimant in conveying the minerals to someone else. It follows that the deed which Miller executed to the minerals did not operate to define his own boundary so as to make his holding adverse to others, and, that being true, it did not operate to make appellee's holding adverse.

Appellee insists that its plea of adverse possession as to the land embraced within the conflict between the

Mutter survey and the Ephraim Hackney survey should have been sustained on the ground that the Mutter survey itself was a well defined boundary. The difficulty with this contention grows out of the fact that the evidence fails to show a continuous possession within the conflict. All that appears is that a great many years ago some fields, which it is claimed were within the conflict, were cleared and used now and then. The interference was never occupied by Mutter or Miller, or by anyone for them. The land was not inclosed for the statutory period, nor was there any evidence that it was regularly cultivated each year for a period of fifteen years. We are therefore constrained to hold that, even if Miller claimed under the Mutter survey, neither his nor Mutter's possession, nor both combined, continued long enough to ripen into a good title.

As appellee's holding was not adverse, it follows that the deed to appellant was not champertous.

We also conclude that the evidence was too vague and indefinite to show that an agreed line along the ridge was ever established between Miller and Ephraim Hackney.

But the point is made that appellant's right to recover in this action is barred by a former judgment between the parties. In support of this position the argument is as follows: In 1898 appellant purchased the Hackney's creek farm from Ephraim Hackney. At that time appellee had separate deeds for the Shortridge tract of land on Stone Coal hollow of Hackney's creek and for the Henry Miller tract on Fed's creek. It was appellant's claim that parts of each of these tracts were within the bounds of his deed from Ephraim Hackney. In 1911, appellee was claiming the minerals in both the Shortridge tract and the Miller tract. Thornbury knew this and brought suit to recover only the minerals in the Shortridge tract. He should have asserted his entire claim and, not having done so, will not be permitted to split his cause of action and bring a second suit for a claim which should have been included in the first. It must not be overlooked that there is a wide difference between the effect of a judgment as a bar against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel between the same parties upon a different cause of action. In the former case, a judgment on the merits is conclusive not only as

to all matters actually litigated and determined, but as to every ground of recovery or defense which might have been presented, and a necessary consequence of this rule is that a party will not be permitted to split up a single cause of action and make it the basis for several suits. Where, however, the second suit between the same parties is upon a different claim or cause of action the judgment in the former action operates as an estoppel only as to points or questions actually litigated and determined, and not as to other matters which might have been litigated and determined. In other words, the doctrine of estoppel does not go to the extent of requiring a person having distinct causes of action against another to join them in one action merely because they were of such character that they could have been properly joined. Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 442; Schuster v. White, 106 Ky. 317, 50 S. W. 242; Southern P. R. Co. v. United States, 168 U. S. 1, 42 L. ed. 355. In many cases the question whether the second suit is for the same cause of action as the first is of easy solution, but now and then the question is involved in doubt and, in that event, the best and most inviolable test is to inquire whether the same evidence will support both actions. Schuster v. White, *supra;* Harrison v. Remington Paper Co., 140 Fed. 385, 3 L. R. A. (N. S.) 954. Applying these rules to the case in hand we find that the land sought to be recovered in the former suit is a separate and distinct tract from that here involved and some distance away. Not only so, but the original source of title to each is altogether different. It is therefore manifest that the evidence heard in the first action would not have established or disproved title in either party to the tract involved in this action, nor would the evidence heard in this action have supported the claim of either party in the former action. On the other hand, if appellant had included the tract here involved in the former suit, he would have had to prosecute and establish two distinct causes of action. Combs v. Stacy, 147 Ky. 222, 144 S. W. 24. The case of Dils v. Justice, 137 Ky. 822, 127 S. W. 472, when properly understood, does not announce a contrary rule. It is true that the second suit was held barred by the first suit though the tracts sued for were different portions of the same boundary, but, as pointed out by the court, each of the parties claimed the land involved in the first suit by the same title as in the second suit, with the

necessary result that the same evidence would have sustained both actions.

On the whole, we conclude that appellant's title should have been quieted.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.