## Asher v. G. F. Stearns Land & Lumber Company et al.

(Decided February 20, 1931.)

(Rehearing Denied December 4, 1931.)

MARTIN T. KELLY for appellant.

CLEON K. CALVERT, JAMES H. JEFFRIES and J. E. MOORE, JR., for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The sole question for determination in this case is: Whether or not the trial court correctly sustained a plea of res judicata interposed by appellees and plaintiffs below to the answer of appellant and defendant below, and correctly denied the avoidance matters alleged by defendant against that plea? As a result of such rulings, the judgment sustained plaintiffs' title to the land immediately in litigation located in Leslie county, and denied defendant's claim thereto, which he asserted in his answer, to which the res judicata estoppel was pleaded in an amended reply, and the avoidance matter thereto was set up in a supplemental rejoinder. The court on final submission overruled defendant's demurrer to the plea contained in the amended reply and sustained plaintiffs' demurrer to the matters in avoidance set up in the supplemental rejoinder. The facts out of which the question arises will now be stated.

On and prior to September 12, 1901, the appellee and one of the plaintiffs below, G. F. Stearns Land & Lumber Company, owned, or claimed that it owned, a body of land in Leslie county, some of the timber upon which it had sold to its codefendant below and one of the appellees here, Ford Lumber and Manufacturing Company. On that day plaintiffs (the two lumber companies) filed their joint action against Hugh Ward and others, in which they stated that the former was the owner of the entire body of land which was described in the petition, and that defendants were trespassing upon it and taking timber therefrom and destroying thereon other timber, and which acts they sought to enjoin, and, prayed for a judgment establishing their title as against the defendants therein. Ward answered and alleged that he was the owner of a described body of land, the paper title to which was older than that claimed by plaintiffs, and that, if their patents lapped on any of the land described in his title, it was void, and that he in that event was the owner of the superior title to the extent of the lap, if any, and to that extent only did he claim to own any of the land described in the petition "and no more."

The issues were made in that case (which is designated in the record as action 178, but which we will refer to herein as "the first action"), and considerable proof was taken. But, before it was completed, and of course

before judgment in that action, the same plaintiffs in the same court on March 30, 1904, filed another action known in this record as action No. 328, and to which we shall hereafter refer as "this action" against A. J. Asher, and in that petition plaintiffs described the same tract of land as was described in the first action, and averred that Asher was committing similar trespasses upon portions of plaintiffs' entire tract, and it prayed for similar relief against him. He answered therein, and denied plaintiffs' ownership of the entire tract claimed by them, and by counterclaim asserted title to definitely described portions of land within the same boundary and set out the title under which he made such claim. Following pleadings made the issues in that case, and considerable proof was taken during the time intervening between the completion of the issues therein and the final submission of and judgment in the first action, which latter was on April 7, 1905.

But before such submission of, and judgment in, the first action, and on June 21, 1904, plaintiffs filed in that (the first) action their amended petition, in which they alleged that A. J. Asher, the sole defendant in this action, had bought out the claim of Hugh Ward in the first action, and that he was claiming to own the same land that Ward had claimed in his answer which he had long since filed therein. But they did not allege in that amendment by which Asher was brought into the action, that he claimed to own any of the land described in plaintiffs' petition except that which was set out in Ward's answer; although the prayer of that pleading of plaintiffs, whereby Asher was brought into the action, asked that he "set up and establish herein any claim he may have to or against the land described in the petition, under purchase from said Ward or otherwise." But so much of that prayer as sought to have adjudicated any other claim of Asher than the one that he purchased from Ward was to that extent broader than and beyond the facts averred in the body of that pleading which was confined to only the claim that Ward had made to the land described in the petition in his (Ward's) original answer. Cases and authorities are abundant to the effect that the prayer for relief cannot be more extensive in its scope than what the facts alleged in the body of the pleading authorize. Coke v. Shanks, 218 Ky. 402, 291 S. W. 362; Crow v. Owensboro & N. R. Co., 82 Ky. 134, and Vila v. Grand Island Electric Light, Ice & Coal Stor-

age Co., 68 Neb. 222, 94 N. W. 136, 97 N. W. 613, 63 L. R. A. 791, 110 Am. St. Rep. 400, 413, 4 Ann. Cas. 59.

On April 4, 1906, which was nearly a year after the judgment in the first action was entered, plaintiffs filed in this one an amended reply which brought on the war to settle which we are now called upon to write a treaty of peace. In it plaintiffs pleaded the judgment rendered in the first action in their favor, and relied on it as an adjudication of the matters involved in this one, and asked that the counterclaim of defendant, Asher, be dismissed, and that they be adjudged all of the land described in their petition, on the ground that the judgment in the first action was conclusive against the defendant in this one. Defendant by supplemental rejoinder responded to that plea, and demurrers were filed to both those pleadings. The judge who was then presiding over the court sustained the demurrer filed by defendant to the amended reply, relying upon the estoppel, and overruled the one filed by plaintiffs to defendant's supplemental rejoinder thereto in avoidance thereof, and the case then followed the example of Rip Van Winkle, and took a long sleep. But on September 21, 1928, when the Bell circuit court, to which the cause had been transferred by agreement, was presided over by another judge, the case was awakened, and that judge set aside the interlocutory rulings on the demurrers referred to, and overruled the one filed to the estoppel plea, and sustained the one to the matters alleged in avoidance thereof, and, defendant declining to plead further, judgment was rendered for plaintiffs in accordance with the prayer of their petition, and to reverse it they prosecute this appeal. The parties stipulate that no other question is presented for determination other than the correctness of the rulings on the pleadings referred to of the last judge who sat in the case and rendered the judgment appealed from.

The doctrine of estoppel by judgment, and usually embraced in the term "res judicata," is of long standing, and is a wholesome and necessary one in the administration of justice, for without it no question properly litigated would ever be settled, even between the parties, and courts would be perpetually harassed in reviewing and rereviewing questions that had been previously adjudicated between parties or their privies. Therefore it is firmly settled in the law that questions and issues once properly adjudicated between parties by a court

having jurisdiction of both the subject-matter and of the person, and of the issues so determined, are forever thereafter conclusive between them and their privies. But the necessity for, as well as the usefulness of, the doctrine as built upon such circumscribing facts, does not authorize courts to uphold and apply it when the judgment relied on is not so circumscribed, for to do so would make of it a tool for the accomplishment of fraud and injustice.

The doctrine does not apply (a) to facts that subsequently arise; nor (b) when the court does not have the necessary jurisdiction, as above outlined; nor (c) when the facts or issues determined were only incidental to the relief sought by the pleadings in the case; nor (d) when the relied on judgment was void, and which would mean that the court rendering it was without jurisdiction to do so; nor (e) where the court in rendering the judgment expressly or by necessary implication reserved the determination of the issues to be later litigated, but against the determination of which the judgment was then interposed as a bar; nor (f) where the record of the case in which the estopping judgment was rendered discloses that the parties themselves agreed and consented that the determination of the case should not embrace distinct subject-matters that might otherwise be embraced under the submission but for such agreement or consent.

There are possibly other exclusions from the application of the general doctrine than the ones so classified. They are usually denominated in opinions and by text-writers as *exceptions* to the general doctrine, but which is not strictly accurate, since our alphabetically classified exclusions therefrom do not create the adjudicated estoppel relied on,—not because they come within the general rule,—but, because for some reason existing in the law, such estopping effect is withheld, and they are excluded from the operation of the general doctrine because they do not come within its scope, and, not being so, they are without the support of its underlying logic, and for which reason they do not come within it. Therefore a more appropriate designation of such exclusions in our alphabetical classification would be to say that they are *qualifications* of the doctrine and not exceptions thereto. The general doctrine, unless modified by some such qualifications, embraces, not only issues that were expressly presented by the record and actually adjudicated, but also

issues that could have been presented and determined under the record as so made up. The enumerated qualifications are as universally established and applied as is the general doctrine itself, and it would be a work of supererogation, as well as an unnecessary lengthening of this opinion, to cite cases or text authorities in substantiation of either the general doctrine or any of its qualifications, except as to the particular one or ones upon which we rest this opinion. Manifestly, if this record presents a situation for the application of any one of the enumerated qualifications, then the judgment was and is erroneous, and should be reversed; while, on the other hand, if the facts are such as not to create any of such qualifications, then the judgment was and is proper, and should be affirmed.

Counsel for plaintiffs in their excusable zeal in advocacy of their clients' cause assert in their brief that a reversal of the judgment would "upset all the law of res adjudicata that has existed in this state for upward of a hundred years," and would engraft "a new principle on the law of judgments that will have a far reaching and most disasterous effect." Such protest against this court reversing the judgment is repeated in their briefs in language equally forceful and emphatic, and all of which would undoubtedly be true and justifiable if their position is conceded; i. e., that the record presents a case coming within the general doctrine and unmodified by any of the enumerated qualifications, supra. Their protest would also be as applicable if the record does present any of such modifying qualifications so as to prevent the application of the general doctrine of res judicata, and this court should uphold the reliance made thereon, notwithstanding such modification flowing from the existence of either of them.

We are not altogether convinced but that this record shows the existence of qualifications (b) and (c), but, since it is quite clear from it that qualifications (e) and (f) are shown to exist, we will not discuss designations (c) and (d), nor, for the reason hereinbefore stated, is it necessary to discuss at length qualificaion (e), further than to say that immediately preceding the submission of the first case the court's attention was specifically called to the pendency of this action, and which was done by a motion of plaintiffs to consolidate the two cases, and which motion was either overruled or not acted on, and the trial proceeded to the investigation of the title of the

specific land involved in that action. It was tantamount to an exclusion by the court of the issues relating to the particular land involved in this action. Without those facts, and in the absence of the pendency of the second action at that time, this qualification would possibly not arise, since in such event the case would probably come within the scope of the general doctrine. But the course pursued by the court at that time was tantamount to an express determination on its part to reserve the issues involved in this action for future adjudication, and which was produced by defendant's objection to the consolidation, and which was acquiesced in by plaintiffs by their going into the trial of the first action without objection, and which latter facts also serve to establish modification (f), whereby the pleaded judgment in the first action as an estoppel in this one was taken out of the general doctrine, and thereby deprived of its estoppel effect.

The text in 34 C. J. 825, sec. 1238, in stating the law supporting qualifications (e) and (f), says:

"A judgment is not generally a bar to the further prosecution of claims or demands which, although set up in the action, were excluded by the court or withheld from the jury, and therefore formed no part of the verdict or judgment, or which were withdrawn by plaintiff voluntarily, or on being required to elect between two or more causes of action joined in his declaration, or which for any reason were not submitted to the court or jury and not considered or passed upon, provided always that the claim withdrawn or withheld was a distinct and independent matter, legally detachable from the rest of plaintiff's case, and not an inseparable part of it. The same rule, with a similar limitation, applies to matters of defense which were excluded or withdrawn."

Among the numerous cases in the notes cited in support of that text are the two domestic ones of Ware v. McCormick, 96 Ky. 139, 28 S. W. 157, 959, 16 Ky. Law Rep. 385, and Campbell v. Mims, 161 Ky. 530, 170 S. W. 1176, and we have examined them, and find that they do so.

In the same volume of C. J. p. 943, it is stated: "If in the former action the question of title, although in

issue, was not actually litigated and determined the judgment is not conclusive'' and among the cases cited in support thereof are those of Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514, and Thompson v. McPherson (Ky.) 124 S. W. 272. All of which effectually answers the argument of plaintiffs' counsel that their clients' title to the entire tract of land described in their petitions was involved in each case, and that the judgment in the first action wherein they were adjudged to be the owners of that boundary was necessarily a bar to this action, and which no doubt would be true but for the qualifications, supra, upon which we base this opinion. Compare also the domestic cases of Dils v. Justice, 137 Ky. 822, 127 S. W. 472; Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 422; Cassidy v. Berkovitz, 169 Ky. 785, 185 S. W. 129, 130; Louisville Bridge Company v. Louisville & N. R. Co., 116 Ky. 258, 75 S. W. 285, 286, 25 Ky. Law Rep. 405; White v. Townsend, 142 Ky. 555, 134 S. W. 876, and Thornbury v. Virginia Iron, Coal & Coke Co., 216 Ky. 434, 287 S. W. 698.

Modification (f), supra, arose and was discussed by this court in the Louisville Bridge Co. case, supra, which involved facts very analogous to those involved here. The opinion discloses that there were two suits for the recovery of distinct installment claims growing out of the same contract. The parties elected to try them separately and to let the other case, for the investigation of its particular facts, remain for future adjudication, and which course was approved by the court. After the trial of one of them, the judgment rendered was interposed by the successful litigant in bar of the other one, but which the trial court denied, and its action was affirmed by this Court. Clearly, all of the installment claims growing out of the violation of but a single contract could have been embraced in one action, and, if only one had been pending, and it sought recovery for only a part of the claims due for the single breach, a judgment in it, construing the contract and based upon facts applicable to all of the claims, would no doubt be a bar to a future action involving the same contract and the same facts. But, inasmuch as there were two actions pending at the time of the trial of the first one, and the parties agreed with the approval of the court to try one of them separately and to allow the other one to remain for future trial, the successful litigant in the case tried would be

estopped to insist on the res adjudicata effect of the first judgment, because of such modifying facts, whereby the conclusiveness of the judgment was withdrawn by the law, under qualifications (e) and (f). In that opinion, in discussing and determining the question, and in concluding that the interposed judgment was not a bar, it was said:

> "When a party is put to an election [or voluntarily does so], and elects what course he will follow, he cannot thereafter abandon that election to the prejudice of the other party. When two suits were filed and were heard together as one action on the demurrers, it was incumbent on the defendants to make objection to the form of proceeding then or not at all. Their silence then was an acquiescence in the prosecution. . . . Under the facts as shown by the record, we conclude that the defendants acquiesced in the bringing of the two separate actions, and by their course led the plaintiff to understand that the prosecution of the two actions was consented to by them, or at least that the objection thereto was waived."

In that case the general doctrine, supra, was recognized, but in denying its application under the facts therein presented the opinion said:

> "But it [the general doctrine] has no application where the defendant consents to the splitting of the cause of action. A party to an action is never allowed to take advantage of that which he consented to, and his consent may be shown expressly, or it may be implied from the circumstances, as in other cases. Both actions referred to were brought in the same court and near the same time. The defendants appeared in both actions, and, without making any objection to the cause of action being split, or the bringing of two suits, filed a general demurrer to the petitions," etc.

Later, and without any objections to the bringing or the pendency of the two actions (which was the splitting of only one cause of action), defendant filed separate answers, and one of the causes proceeded to trial and judgment. That judgment was afterwards attempted to be interposed as an adjudication of the issues involved

in the second action which had not been tried, and the court disallowed it, and which ruling was affirmed by this court, and in doing so this language was used:

"Under the facts as shown by the record, we conclude that the defendants acquiesced in the bringing of the two separate actions, and by their course led the plaintiff to understand that the prosecution of the two actions was consented to by them, or at least that the objection thereto was waived. After all this, it was too late, after one action had proceeded to judgment, to object in the other action to that which for three years had at least impliedly been consented to."

In the Cassidy case a similar question was presented, and in upholding qualification (f) supra, this court said:

"Although the doctrine of res judicata is thoroughly established in this and other jurisdictions, there is an exception in this state at least to its universal application. In the case of Harp v. The Southern Ry. Co., 150 Ky. 564, 150 S. W. 663, while the doctrine was expressly recognized and approved, it was held not to apply where the parties had consented in an agreed suit to a submission of a part only of the issues growing out of a single cause of action, the court stating its reasons for refusing to apply the rule to that case as follows:

" 'When it is considered that the object of the rule against splitting causes of action is to protect the defendant from unnecessary vexation and cost, it cannot be said that this rule is violated when the defendant consents that a part only of a matter in dispute may be determined in one case or in one action. The defendant may, if he chooses, permit the plaintiff to split his cause of action and bring numerous suits when only one was necessary. He may waive his right to insist that all matters of dispute that could be determined in one action must be included in that action, and, when he has thus waived the right to object that the action has been split up, he will not be heard to make this objection, when to allow him to do so would prejudice the rights of the plaintiff. For example, the defendants in the agreed case had the right to insist that the whole

controversy between the parties should be embraced in the agreed case, but in place of doing this they consented that only a part of the matters in dispute should be submitted in the agreed case, and to permit them now to make the defense relied on would enable them to defeat apparently just claims that the plaintiff would probably have put in the agreed case if they had requested that it be done, or at any rate their failure to consent would have given the plaintiff the right to either submit in an agreed case a part of the mater in dispute, or else have declined to submit any of it.' "

In the cases of Bridges v. McAlister, 106 Ky. 791, 51 S. W. 603, 45 L. R. A. 800, 90 Am. St. Rep. 267, 21 Ky. Law Rep. 428; De Charette v. St. Matthews Bank & Trust Co., 214 Ky. 400, 283 S. W. 410, 50 A. L. R. 34; Middleton v. Graves, 229 Ky. 640, 17 S. W. (2d) 741, it was held that an estoppel of this nature is mutual, and, if binding on one of the parties, is also binding on the other. If, therefore, it should be said that plaintiffs upon the trial of the first action endeavored by their motion to consolidate the two actions, and to have all the issues in both of them tried at once, but that defendant prevented it by objecting thereto, and for which reason plaintiffs should not be denied the right to interpose the judgment rendered in that case as conclusive upon the issues involved in this one; the answer is, that under such facts the objecting defendant could not rely on the judgment in the first action as a bar to any relief that plaintiff might be entitled to in this one if it had been rendered in his favor, and, since in that event it would not be available to him, it cannot be available to plaintiffs. But plaintiffs did consent to try the first action separately, and proceeded to do so, because this one was not prepared for trial, and all of which the court necessarily found to be true.

We therefore conclude that the court erred in overruling the demurrer of defendant filed to the amended reply of plaintiffs in this action, and also erred in sustaining the demurrer to the matters pleaded in avoidance thereof in defendant's supplemental rejoinder. We further conclude that in so determining we have not "upset all the law of res judicata that has existed in this state for upward of a hundred years," nor have we "engrafted a new principle on the law of judgments

that will have a far-reaching and most disasterous effect.''

Wherefore the judgment is reversed, with directions to sustain the demurrer filed to the amended reply, and to overrule the one filed to the supplemental rejoinder in response thereto, and for proceedings not inconsistent with this opinion.

Whole court sitting.