# Frazier et al. v. Banks et al.

April 23, 1943.

62

P. T. Wheeler and Lewis E. Harvie for appellants

Stephen Combs, Jr., and W. H. Lewis for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The Circuit Court adjudged title by adverse posses-
sion to 47.8 acres in the heirs of William Banks as against
the superior record title of the Kentucky River Coal Cor-
poration to the minerals and of Mrs. Louisa Frazier to
the surface. He also ruled that Mrs. Frazier's deed was
champertous and void.

In 1882 Wesley Banks acquired title by deed to 50
acres patented to Shadrack Combs in 1844, which ad-
joins the tract involved in this case, referred to as con-
taining 50 acres, and which had been patented to R. H.
Combs in 1872. Wesley Banks procured a patent in
1886 to 100 acres, a portion of which joined his land on
the north and a portion on the south. The southern tract
covered most of the land involved. We shall refer to it
as the "Combs tract." The appellants derived title
from Combs. Every one concedes that Wesley Banks'
patent to the extent of the overlap is void. KRS 56.190,
Sec. 4704, Ky. Stats. And it is not denied that the pos-
session by Banks and his successors of the land which he
and they owned was not extended to the overlap or the
Combs tract, although covered by his patent, it being
necessary in such a situation that the possession, if any,
be of the character essential to vesting title by adverse
claim, wholly independent of the land to which one has
title. Wynn v. Gover, 268 Ky. 562, 105 S. W. (2d) 636.
We go forward with our consideration of the case ignor-
ing Wesley Banks' patent to the Combs tract.

Perhaps it was early in the 1890's that Banks or his
successor built a rail fence from his land down into and
embracing a crescent shaped segment of the Combs tract,
estimated to contain 15, 25 or 40 acres. Afterwards from
two to five acres of this was cleared and partially culti-
vated by them. In 1892 Banks conveyed his land to
Boney Ison and he conveyed it to J. H. Frazier in Feb-
ruary, 1907. Neither grantor undertook to include any
part of the Combs tract in his deed. In June, 1907, Fra-
zier conveyed the minerals to the Rockhouse Realty Com-
pany, predecessor of the Kentucky River Coal Corpor-
ation, and in August, 1907, conveyed the surface to Wil-
liam Banks. Again no attempt was made to include the

Combs tract. The owner leased it, in writing, to Boney Ison, then owner of the adjoining Banks' land, for the years 1894 and 1900 to 1904. The last lease expressly provided that Ison could clear five acres. It was leased to Gid Ison, William Banks' brother-in-law, for 1905 and 1906. For the year 1907 Banks leased it. The consideration was $1 cash, the cultivation of the arable land, keeping the improvements in good repair, committing no waste, and preventing trespass by others. It was probably used for grazing. It was also provided that the lessee, Banks, "will at all times openly and notoriously proclaim his renting as by and under the title to the said land of the said first party." It was during this year that Banks obtained title to the surface of the land adjoining on the north from Frazier. Three years later, on March 5, 1910, he procured a deed to the Combs tract from his brother, Wesley Banks, who was living 15 miles away, and who had long before apparently abandoned any claim to it. William Banks' heirs do not undertake to claim title under this deed, relying wholly upon adverse possession. The taking of this deed, like the taking of the void patent, did not extend possession of the land to which William Banks had an apparently good title beyond its boundaries to cover any part of the land covered by the deed. Burt & Brabb Lbr. Co. v. Sackett, 147 Ky. 232, 144 S. W. 34; Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629.

The appellants deny the sufficiency of the evidence to establish a prescriptive title in appellees and rely upon the proposition that Banks having acquired possession as tenant of the appellants' predecessor could not divest them of title in that manner since a tenant's original entry is amicable to his landlord's title. It is argued that there is no proof of renunciation of the relationship of landlord and tenant established by the lease, so it is deemed to have continued through the period; that a person once a tenant is presumed to remain such so long as he holds possession of the land demised. In response the appellees submit that the relationship ceased altogether with the year 1907.

It was early declared that tenants or quasi tenants cannot "legally attorn to a stranger, or take shelter under an adversary claim, or purchase in or set up the same, in opposition to their landlord, or controvert his title, or set up an elder outstanding claim against it. And

any person entering under them, or either of them, or deriving title from them, will stand in no better condition than they.'' Chambers v. Pleak, 36 Ky. 426, 6 Dana 426, 32 Am. Dec. 78. There may be added, as stated in Fordson Coal Company v. Mills, 234 Ky. 64, 27 S. W. (2d) 382, 384, by quotation from Chambers v. Pleak, that while it is possible for a tenant to acquire title against his landlord by adverse possession, such antagonistic claim must be ''manifested by some open, notorious, public act of disclaimer, and holding over against the will, and in opposition to the title, of the landlord, or by some forcible act of expulsion. If not manifested by some distinct and unequivocal act of this kind, his possession will be still deemed consistent with the possession of his landlord, or co-tenant.''

It was expressly provided in Banks' lease that he would surrender possession of the property to the owner at the expiration of his term, that is, December 31, 1907, but if he should fail to do so ''such holding over shall not be construed to be renting from year to year but may be terminated at any time at the option of the party of the first part.'' So far as the period intervening until Banks' death in November, 1917, is concerned his heirs are on the horns of a dilemma. If he continued to exercise any right or possession of the land, he did so as a tenant at will and in accordance with the terms of his lease. If he did not remain in possession, then obviously there is no basis for his claim of adverse possession. By accepting the leases on the land Boney Ison and, later, William Banks renounced whatever previous adverse possession there may have been and recognized title in appellants' predecessor. Woods v. Garrard, 282 Ky. 233, 138 S. W. (2d) 325. The slate was wiped clean and no consideration can be given any act or claim prior to 1908. The most appellees are entitled to claim is that there was a hiatus in the possession between that time and when Banks got a void deed from his brother in 1910.

No one ever resided upon the land or close to it. The evidence of acts of dominion is meager and indefinite. What was done was sporadic. There is evidence that in the spring of 1911, following the deed from his brother, William Banks deadened some trees within the inclosure of the old rail fence. In 1915 he extended the fence to take in a little more land. In 1918 about two acres were cleared and this was cultivated from time

to time, until perhaps 1924. There is testimony that in 1920 or 1922 or 1923, the appellees undertook to sell three trees to J. B. Frazier, but they were never cut. This is the evidence for appellees in its most favorable aspect. In 1927, the appellees, through George Banks and the husband of his sister, hired two men to cut some timber on the land, but after they had cut one tree Banks stopped them, saying that if they did not stop they would have a lawsuit. This testimony stands undenied.

The whole case smacks of bad faith. Banks and his heirs knew who owned the land. It is hard to believe that the use of it as described was under any bona fide claim of right such as would eventually ripen into title by prescription. A claim of right, title or ownership is essential, otherwise possession is deemed subservient to the title of the record owner and not adverse. 2 C. J. S., Adverse Possession, Section 56; Arthur v. Humble, 140 Ky. 56, 130 S. W. 958; Casteel v. Pennington, 228 Ky. 206, 14 S. W. (2d) 753. Absence of good faith saps the strength or lessens the weight of evidence of a claim of right. While perhaps the claims and overt acts subsequent to the recognition of title by becoming a tenant need not have been equivalent to disclaimer or as positive a notice or as openly hostile as they must have been while the relation of landlord and tenant existed, certainly they and their purpose ought to have been very clear and more than is ordinarily the case where a good faith claim of right existed. This evidence is far from meeting that standard. There must have been a continued and sustained trespass or continuity of hostile possession, which contemplates more than occasional acts of dominion such as intermittent cultivation or cutting of timber. Arthur v. Humble, supra; Sparks v. Jackson, 142 Ky. 17, 133 S. W. 959; Thornbury v. Virginia Iron, Coal & Coke Co., 216 Ky. 434, 287 S. W. 698; Greenway v. Watson, 268 Ky. 745, 105 S. W. (2d) 848.

We are of opinion that the appellees failed to establish adverse possession and that being so there is no basis for concluding the deed to the surface to the appellant, Louisa Frazier, is champertous and void.

Wherefore the judgment is reversed.