CARLSON et al. v. ASHER COAL MINING CO.

No. 10620.

United States Court of Appeals Sixth Circuit.

Feb. 14, 1949.

---

[1] Penn v. Automobile Ins. Co., D.C., 27 F.Supp. 337.

·Cleon K. Calvert, of Pineville, Ky., and Charles I. Dawson, of Louisville, Ky. (Cleon K. Calvert, of Pineville, Ky., Chas. I. Dawson (of Bullitt, Dawson & Tarrant), of Louisville, Ky., Claude P. Stephens, of Lexington, and Glenn H. Stephens, of Williamsburg, Ky., on the brief), for appellants.

E. B. Wilson and W. R. Lay, both of Pineville, Ky. (E. B. Wilson, Golden & Lay, all of Pineville, Ky., on the brief), for appellee.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of an action in ejectment involving two parcels of land, one of 10 acres and one of 90 acres, situated in Bell County, Kentucky, on the Big Camp Branch of the Left Fork of Straight Creek of the Cumberland River. An answer, consisting of a general denial and also a counterclaim, was filed, praying that title be quieted to the real property in question. The case was tried without the intervention of a jury, and the court gave judgment for appellants as to the 10-acre tract, and for the appellee as to the 90-acre tract. This appeal is prosecuted from the portion of the judgment relating to the 90-acre tract.

The 90-acre parcel is part of the Jacob Woollum grant No. 24864, and on two sides is contiguous with a tract of land of some 355 acres conceded to have belonged to appellants' mother, Bettie L. Hoskins, from 1895 to her death in 1939. A boundary including both the 355-acre tract and the 90-acre tract was deeded in 1889 by A. B. Smith and his wife to A. L. Monroe, first husband of Bettie L. Hoskins, and to Bettie Monroe, his wife. On April 14, 1890, Monroe and his wife conveyed the same property to D. G. Colson who, on April 5, 1892, reconveyed to Bettie Monroe, who lived upon the tract until November, 1905.

The District Court found that the 90-acre tract lies wholly within the boundary described in the complaint, which is well defined both by description in the deed from Colson to Bettie Monroe, and by being plainly marked on trees throughout its entire extent.

The District Court also found:

"The entire boundary of land described in the complaint and the entire Jacob Woollum Grant No. 24864 are covered by and embraced within a grant from the Commonwealth of Virginia to Benjamin Say for 90,000 acres, and a grant from the Commonwealth of Kentucky to Abraham Morehouse for 50,000 acres, both of which grants are senior to the Jacob Woollum Grant No. 24864, and to the deed from D. G. Colson to Bettie Monroe, and each of which were granted and issued prior to the year 1835, and to the enactment by the General As-

sembly of Kentucky of the County Court Order Act of 1835.

"Both the said Say grant and the said Morehouse grant were heretofore forfeited to and the title thereto vested in the Commonwealth of Kentucky under the provisions of Chapter 22, Article 3, of the Acts of the General Assembly of Kentucky for 1906, later incorporated in Kentucky Statutes as sections 4076b to 4076k, inclusive."

In conformity with the judgment of forfeiture the title to the Say patent was sold at public outcry on December 7, 1908. George V. Turner bought the title, and a deed was executed to him on February 4, 1909. The appellee, Asher Coal Mining Company, acquired and claims title to the land in controversy by mesne conveyances from Turner. The title to the Morehouse grant was likewise forfeited by a judgment entered January 23, 1931, and appellee purchased it; but since this patent was junior to the Say patent, it is not relied on by the appellee.

Appellants' principal contention is that the District Court erred in adjudging title to the 90-acre parcel to be in the appellee upon the ground that under section 4076g, the title to the 90-acre tract vested in Bettie Hoskins at the date of the judgment of forfeiture of the Say patent. This section reads as follows:

"All title and claim proceeded against under this article and forfeited to, and vested in, the Commonwealth and not purchased back by the owner or claimant thereof, as authorized in § 4076e hereof, whether such forfeiture be for past delinquencies or for future delinquencies as authorized under § 4076k hereof, shall be, and is hereby, transferred to, and vested in, any person for so much thereof as such person, or those under whom he claims, has had the actual adverse possession for five years next preceding the judgment of forfeiture, under claim, or color of title, derived from any source whatsoever, and who, or those under whom he claims, shall have paid taxes thereupon for the five years in which such possession may have been or may be held; and in those in privity with such person, his heirs, representatives or assigns, as to the mineral or other interests or rights in or appurtenant to such land."

The deed to Turner, under which appellee claims possession, in conformity with the statute, contained the following exclusion clause:

"excluding therefrom the portion thereof, of which any persons, or those under whom he claims, has had the actual adverse possession for five years next preceding said judgment of forfeiture, under claim or color or of title derived from any source whatever, and who, or those under whom he claims, shall have paid taxes thereupon for the five years in which such possession may have been held."

The District Court in its oral opinion stated:

"Now, as to the other tract in dispute which we have referred to as the Woollum ninety acre tract, approximately ninety acres, as shown on the map, the records show without any dispute that for many years Mrs. Monroe, later Mrs. Hoskins, had color of title, that is it was embraced in her deed which she acquired from Smith, and she conveyed it away, and then reacquired it from a man named Colson. If there were nothing more in the record, I would be forced to the conclusion that she acquired good title to that property by adverse possession by reason of having entered within that boundary under color of title and held and claimed it for the requisite statutory period. * * *

"* * * If Mrs. Monroe, or Mrs. Hoskins were shown to have claimed the entire boundary described in her deed from Colson, I would not have much doubt about the rights of her heirs to recover it here. But did she claim it? * * * There is some rather vague evidence that she may have claimed it, outside of the testimony of the Plaintiffs which is incompetent under the Kentucky code, but we have the positive testimony of a number of witnesses that she didn't claim it."

The court, therefore, found that the testimony "preponderates in favor of the fact that at various times to various persons Bettie Monroe, or Bettie Hoskins said she did not claim this parcel," and held

in its conclusions of law that the appellee "is the owner of the 90 acre parcel on Big Camp Branch embraced in the Jacob Woollum grant No. 24864."

It is the established law in Kentucky, as well as in other states, that in order to hold land adversely, one must claim to be the owner. Arthur v. Humble, 140 Ky. 56, 130 S.W. 958; Richie v. Owsley, 137 Ky. 63, 121 S.W. 1015; Chesapeake & O. R. Co. v. Rosskamp, 179 Ky. 175, 200 S.W. 496; Casteel v. Pennington, 228 Ky. 206; Frazier v. Banks, 294 Ky. 61, 170 S.W.2d 900.

Appellants' principal contention is that the disclaimers relied upon by the court were made more than twenty years after the judgment of forfeiture and hence are not competent evidence bearing on the question whether Bettie Hoskins had title to the 90-acre tract by adverse possession. They urge that Bettie Hoskins had actual adverse possession of the tract under color of title and had paid taxes thereon for the five-year period preceding the judgment of forfeiture, and that under section 4076g title to the tract was transferred to and vested in Bettie Hoskins May 14, 1908, and could not, as a matter of law, be divested by mere statements of disclaimer.

The record shows that each of the statements relied upon by the District Court in giving judgment for the appellee was, in fact, made many years after the entry of forfeiture which as to the Say grant was May 14, 1908. One Bill Baker, for instance, stated in effect that Mrs. Hoskins told him not to cut timber on the Woollum tract which adjoined her land. Baker, appellee's witness, could not fix the date of his conversation with Mrs. Hoskins, but stated that it was while he was cutting timber for her. William Jackson, appellee's witness, who helped haul the timber cut by Baker, says that it was cut in 1935.[1] A. A. Fish, an engineer, testified to the effect that in 1935 Mrs. Hoskins told him that she did not own the Woollum tract, and Walter Brock testified to a similar conversation which he placed somewhere from 1932 to 1935.

Considerable testimony was given to the effect that during the five-year period before the judgment of forfeiture Mrs. Hoskins claimed the entire property covered by the boundary and exercised dominion over it. It was shown that the property was continuously occupied by tenants, at least one of whom was instructed not to permit the cutting of timber on any part of the boundary; that a sawmill and tram road were constructed, the tram road passing through the 90-acre tract, and that timber was cut on various occasions from the entire boundary on both sides of the creek by Mrs. Hoskins' agents. The big poplar on the 90-acre tract was cut for her around 1902 or 1903. Two surveyors who had recently examined the property testified that the poplar had been cut within the entire boundary. One surveyor said it was cut approximately 35 years before they examined it.

The testimony with reference to the sawmill and tram road is important because the only evidence of possession in the 90-acre tract was the cutting of timber and the existence of the tram road. The sawmill was built by Bettie Hoskins' husband, Jim Tom Hoskins. Since Hoskins left the Camp Creek property in 1904, the sawmill was built before that time. At first the logs were hauled out by "cattle," and this timber, Roscoe Sizemore says, was taken "from both sides of the mountain, from Dry Hollow up on up."

A tram road was built going along the branch up to the head of the creek. It was constructed some time around 1900, and the two surveyors who examined the entire property shortly before the trial found remains of it along the branch and running right through the 90-acre tract. One surveyor described "The old ties and the spikes in the ties and the old grading and the old logs in the ties and the old grading and the old logs which were used as bridges across

---

[1] Another Bill Baker, a much older man, appellants' witness, who rented the Hoskins main house on the Big Camp Branch from 1905 to 1907, testified that Mrs. Hoskins claimed "all of the Big Camp Branch" (which includes the 90-acre tract), and also that she told him persons should not be allowed to cut timber, and to notify her if they did.

Big Camp Branch." In answer to a question by the court as to the condition of the structure, the surveyor said:

"Very aged; part of the grading had washed out. Some of the ties and spikes removed. The most of the trestles or bridges across the branch is gone, but there is evidence of an old tram road which can be followed almost parallel with Big Camp Branch."

He stated that the tram road was a narrow gauge track approximately parallel with the branch and running clear through the 90-acre tract.

This testimony was not controverted. In 1929 a second tram road was put in by the Patterson Lumber Company, but this tram road clearly is not the one constructed many years previously.

As to the extent of Mrs. Hoskins' claim, the testimony is substantial. The 90-acre tract was on the opposite side of Big Camp Creek from Mrs. Hoskins' main house. Among other witnesses as to Mrs. Hoskins' claim to the 90-acre tract are two of her tenants. One of them lived on Big Camp Branch from 1901 to 1905, and one of them (Bill Baker) occupied the Hoskins main house in 1905, 1906 and 1907. Both testified that Mrs. Hoskins claimed all the land from Dry Hollow up the Big Camp Branch.

The District Court in its oral opinion found that the other requirements of adverse possession had been established, but that the evidence as to her claim to the entire boundary made within the five-year period was rebutted by contradictory statements made by Mrs. Hoskins many years thereafter.

If the statements relied on by the District Court had been made during the five-year period prior to the entry of judgment of forfeiture, they would have been competent upon the question whether under the statute Mrs. Hoskins' adverse possession ripened into title, for constructive possession may be restricted by the acts and declarations of the occupant. Kentucky Coal & Timber Development Co. v. Kentucky Union Co., D.C.Ky., 214 F. 590. However, viewing the disclaimers in the light most favorable to the appellee, they amount to no more than an attempted disclaimer and abandonment of a title which had vested twenty years before. But a title once acquired cannot be lost by abandonment. Napier v. Baker, 235 Ky. 724, 32 S.W.2d 49; Duncan v. Mason, 239 Ky. 570, 39 S.W.2d 1006; Cox v. Colossal Cavern Co., 210 Ky. 612, 276 S.W. 540.

The same rule obtains generally in other states and in the federal court. East Tennessee Iron & Coal Co. v. Wiggin, 6 Cir., 68 F. 446, 449, opinion by Judge Lurton. This case construed a Tennessee statute similar to section 4076g of the Kentucky Statutes. The question was whether proof of abandonment rebutted proof of adverse possession under color of title. The court said that it did not, declaring:

"But, under the long-settled construction of section 3459, the effect of adverse possession taken and held under an assurance of title is not only to bar the action of the person ousted, but extinguishes the title of the excluded owner, and vests in the possessor an indefeasible title, operative as a muniment of title superior to any and all others.

*   *   *   *   *   *

"Precisely what is meant by 'an abandoned' legal title is hard to define. If it is the valid legal title, it is inconceivable how it can be abandoned. McCoy's disappearance and long neglect to assert the title which appellants claimed he acquired by his adverse possession did not operate to extinguish or toll it; nothing but a possession adverse to him for the statutory period would have such a consequence. Plaintiffs did not abandon their title by neglecting for 40 years to take possession or bring action. If there has not been a devolution of title by operation of an adverse possession, their title is perfect, and their right of recovery would not be affected by a theoretical abandonment predicated alone upon a neglect of their estate."

We conclude, therefore, that title vested absolutely in Bettie Hoskins at the date of the judgment of forfeiture; that the disclaimers made from 1930 to 1935 do not divest the title; and that the appellants'

248

contention upon this phase of the case must be sustained.

■ One minor question remains to be disposed of, namely, appellee's contention that it is not shown that Bettie Hoskins paid the taxes on the property in question within the five-year period. It suffices to say that uncontradicted and competent evidence shows that such payment was made during the entire period. The fact that the number of acres was not correctly estimated is not material under Kentucky law. Cf. Lockard v. Commonwealth; 133 Ky. 369, 118 S.W. 331.

We find no abuse of discretion in the refusal of the District Court to grant a motion for new trial.

The judgment of the District Court as to the 90-acre tract is reversed and the case is remanded for further proceedings in accordance with this opinion.