CASE 16.—SUIT BY ANN PHILLIPS AGAINST L. T. STEWART
INVOLVING THE LOCATION OF THE DIVISION
LINE BETWEEN THEIR ADJOINING LANDS. Oct.
31, 1906.

# Phillips v. Stewart

Appeal from Rockcastle Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for defendant, plaintiff appeals—Reversed.

1.  Boundaries—Evidence—Reputation.—In a processioning proceeding which was never perfected, certain old people living in the neighborhood were requested to locate a corner previously marked by a gate post, and from this a surveyor ran the line. Held, that, all of such citizens being dead at the time suit was brought to determine the boundary line, the surveyor was entitled to testify concerning such facts.

2.  Same—Location—Reputation—Evidence.—It is competent to prove the location of a corner or line of public survey by reputation.

3.  Same.—In a suit to establish a boundary, evidence held to require a finding that a corner formerly represented by a gate post was at the point fixed by certain aged residents, from which a surveyor established the line.

4.  Appeal—Theory of cause.—Where a suit in equity was transferred to the common-law docket, but the transfer was ignored both by the court and parties when it came to trial, and was tried as an equitable action, it will be so treated on appeal.

L. W. BETHURUM AND J. W. ALCORN for appellant.

C. C. WILLIAMS, for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The litigated question in this action is the true location of the boundary line separating appellant's and appellee's lands. The land in dispute is uninclosed, save that one or two buildings of small value have within the last few years been built upon it by

appellee.   These, however, have not. been built long
enough to ripen into a title by possession, so. that the
question is the one of the location of the lines. Ap-
pellee's title papers recognize and call for certain
corners in appellant's line. One of the corners called
for in appellant's ancestor's deed, more than fifty
years old, was a gatepost.   The next corner is a
beech, and so is the next a beech.   Two beeches were
found in surveying the lines after this suit was in-
stituted.   One (the last named) is admittedly the cor-
ner designated. We think the other is established by
the proof as the second corner.   The true location of
the point where the gatepost stood will settle all that
part of the dividing line in dispute.   The gatepost
has long since disappeared.   There is no trace of it
now left.   It was shown in evidence that appellant
and appellee's ancestor, from whom the latter in-
herited, had a dispute as to the location of the gate-
post corner, as well as the first beech corner, about
twenty years ago.   Appellant and her husband then
applied to the county court for the appointment of
processioners to establish and re-mark the obliterated
corner.   They were appointed, and with the county
surveyor met upon the ground.   They had called a
number of old people living in the neighborhood, who
were requested, and probably sworn,   to locate the old
gatepost.   Each of the witnesses so called stuck a
stick down at the point where he remembered the
post to have been.   They differed some few yards.
The surveyor placed his Jacob's staff in the center
of the points so selected, and from thence ran the
line to the beech which was then pointed out as the
next corner, and which is the one above named, re-
ferred to in the record by the witnesses as a broken
top beech tree.   The magnetic degree of that course
was 70 degrees E., and the distance 21¼ poles.   The
county surveyor who was present and ran the line at
the time made a written memorandum of what had
been done, and signed it. .But it was not signed by
the processioners, nor was it returned to the county

court, as was required by statute. Appellee's an-
cestor, the then owner of appellee's land, was present
at this proceeding, and seems to have acquiesced in
it. On the trial of this case the surveyor who then
ran the line was called as a witness, and testified to
the foregoing facts, and produced the certificate which
he had given at the time of processioning. His testi-
mony was objected to. But we think it was relevant.
The old citizens who were called upon by the pro-
cessioners, and upon whose statements the corners
were established, are now all dead. It is competent
to prove the location of a corner or line of public
survey by reputation. In the nature of the thing those
who marked an original corner, and who knew per-
sonally of its location, will in time pass away, and so
in some instances will the corners themselves. Such
matters of common concern are discussed in the
neighborhood, and are accepted and treated by those
interested as being of a certain nature, so that their
reputation becomes established and known of all in
the community. After the death of the original wit-
nesses and the destruction by time of the monuments
marking the corner, the only thing left by which its
location might be identified is the reputation estab-
lished and made notorious when both witnesses and
corners were in existence. It is, therefore, that the
law receives the evidence of the reputation in proof
of the fact of the location of such corners and lines
as the best evidence obtainable in the nature of the
case. The surveyor's certificate was not receivable
as a processioner's report, because it did not conform
to the statute concerning the processioning of land.
But what was said then to the surveyor by the per-
sons who were then before him was evidence of rep-
utation of the location of the original monument and
corner. One or two of the so-called processioners also
testified substantially to the same facts as the sur-
veyor did. Their testimony was likewise competent
for the same reasons. Other witnesses yet living

testified that they knew where the old gatepost stood, and corroborated the location made by the surveyor, William Wood. Running thence N., 70 degrees E., 21¼ poles, brings the line to the broken top beech. This evidence outweighs, in our opinion, the con- flicting and unsubstantiated statements of appellee's witness that the gatepost was north of the point lo- cated by Wood.

Appellee contends that by beginning his line at a fence which bisects it some rods short of the corner called for in his deed, and running thence the requisite distance called for in his deed, it would carry his line to a point some rods north of the point where appel- lant claims the gatepost stood, and would give all the disputed land to appellee. There is no warrant for this contention. He did not own, nor did his father own, anything north of the gatepost, and though his north and south line should have begun at the cross fence, instead of south of it, it would have to stop at the gatepost, wherever that had been located.

The case was begun in equity by appellant to quiet title. It was really in ejectment. Appellee was in possession of the little storehouse and barn on the disputed territory. The cause was transferred to the common-law docket by an order of court, but this order was ignored by the court and the parties when it came to the trial, and the case was tried as an equitable action. On appeal we treat it the same way. The weight of the evidence was on appellant's side, and the judgment should have been accordingly.

The judgment is reversed, and cause remanded for judgment consistent herewith.