758 F.2d 653
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RURIC HUFF AND NANNIE HUFF, PLAINTIFFS-APPELLEES,
v.
WHITESBURG LOGGING COMPANY.
 NO. 83-5804
 United States Court of Appeals, Sixth Circuit.
 2/1/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 BEFORE: KEITH and JONES, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 Per Curiam.
 
 
 1
 Appellant, Whitesburg Logging Company (Whitesburg), appeals from the district court's judgment entered on behalf of appellee Ruric Huff. Upon consideration of the issues presented in this appeal, we affirm.
 
 
 2
 Neither Whitesburg nor Huff contests the district court's findings of fact. Because the district court's opinion is not published we have reproduced those findings herein.
 
 
 3
 Plaintiff, Ruric Huff, is a citizen of Illinois. His wife, Nannie Huff, was originally a party plaintiff, but she died in 1980, leaving Ruric Huff as her sole heir. The defendant is a Kentucky corporation having its principal place of business in Letcher County, Kentucky, and is, therefore, a citizen only of Kentucky. The amount in controversy is greater than $10,000.00, exclusive of interest and costs.
 
 
 4
 The plaintiff claims ownership of land upon which the defendant cut timber in 1978. The defendant also claims ownership of some of the property where it cut timber, and although it admits it may have cut some timber on land it did not own, it nevertheless denies that plaintiff owned it.
 
 
 5
 On the map introduced into evidence as plaintiff's Exhibit 15, through surveyor James Meredith, the area upon which the timber was cut is shown in red and the area within that as claimed by defendant is shaded with stripes. This striped area consists of 11.47 acres. The total area in which the timber was cut and is in dispute covers 35.17 acres, of which 23.7 acres in ownership is not claimed by the defendant.
 
 
 6
 Plaintiff's title emanates through his wife, who received it from Boyd and Alice Campbell. The description in that title is somewhat indefinite, however, as it does not contain metes and bounds. Instead, it follows geographical lines in a general way and is keyed to the lines of adjacent or formerly adjacent landowners such as John B. Eversole, Harry Eversole, Jack Combs and others. Two very important references in this description are to the 'Company' line and to Buzzard Rocks. The 'Company' here was Fordson Company, apparently a subsidiary or division of Ford Motor Company, which once had extensive holdings in Leslie County. Its property in this area is now owned by the United States as part of its national forest. The Buzzard Rocks are a known geographical landmark, but there is also a Buzzard Cliffs in the area, which some of the witnesses referred to as the landmark.
 
 
 7
 This Campbell property is traceable back to a 200 acre patent in the name of Farris Begley, which was granted to him by the Commonwealth of Kentucky in 1846. However, the description in that patent apparently does not include the property in question as the description is literally drawn. There are references in plaintiff's chain of title concerning unreported deeds which may include the property in question, but the proof is sufficiently uncertain so to leave a doubt as to the plaintiff's claim to ownership of property south of the dividing ridge where timber was cut. There is no dispute over the ownership by the plaintiff of the property on the north side of the ridge.
 
 
 8
 By reputation, however, for at least 60 years, the property line of the plaintiff's (and his predecessors') land has extended to the Fordson Company line, now the United States National Forest line, south of the dividing ridge between the Wilder and Williston Branches. This boundary includes the area in dispute where timber was cut. Years ago, there was also a fence south of that ridge, which is further evidence that plaintiff's predecessors in title owned the land south of the ridge.
 
 
 9
 Moreover, there has never been a patent issued granting anyone title in those portions of the area in dispute south of the dividing ridge, save the 11.47 acres which the defendant claims under an 82 acre patent. The defendant's claim is traceable back to this patent issued in 1855, also to Farris Begley. However, the property description contained in that patent will not close if run out, and the original survey filed with the patent has been lost.
 
 
 10
 In the 1920's, a survey of the area was made by Fordson Company. Maps from that survey are considered reliable. On those maps, most of the 82 acre patent overlaps on the property enclosed by other, more senior patents in the area. At the time of that survey by Fordson, attempts were made to locate the area covered by the 82 acre survey. Certain specific landmarks were found, but none in the area of dispute was ever located. The fact that title to those areas south of the dividing ridge and outside the 82 acre patent cannot be traced to any other patent is further proof that the boundaries of the existing patents (200 and 82 acres) are uncertain and inaccurate.
 
 
 11
 Nevertheless, even though the description in both patents are uncertain and undefinable from these descriptions, reputation testimony was relied upon in concluding and finding that the plaintiff is the owner of the land south of the ridge in the area in red and red stripes from plaintiff's Exhibit 15.
 
 
 12
 The defendant clear cut the timber in this area. The stumpage value for timber in the striped area (11.47 acres) is $5,470.36; in the remaining area (23.5 acres), it is $12,083.68. Total damages for the cut timber, therefore, is $17,554.04. Damage was also incurred as a result of the defendant's building the logging roads to get to the timber. The cost to repair these roads and their damage to the area as a direct result of the construction of those roads is $2,000.00. Therefore, damages to the plaintiff as a direct consequence of the defendant's trespass and timber cutting are $19,554.04.
 
 
 13
 There was no bad faith or malice by the plaintiff in bringing this suit or claiming this title, as alleged by the defendant in the counterclaim, nor did the plaintiff make any false statements disparaging the title by the defendant. There is no claim or proof of adverse possession in this case.
 
 
 14
 * On appeal Whitesburg contends that reputation testimony is inadmissible in an action to quiet title and, therefore, cites Arthur v. Humble, 140 Ky. 156, 130 S.W. 958 (Ky. 1910). Whitesburg also c ntends that reputation testimony is admissible in an action to settle a boundary dispute and, therefore, cites Jones v. Wheeldon, 309 Ky. 184, 217 S.W.2d 221 (Ky. 1949). Whitesburg further contends that because the district court incorrectly characterized Huff's action as a boundary dispute rather than an action to quiet title, the district court incorrectly admitted the reputation testimony into evidence.
 
 
 15
 Central to Whitesburg's contention is the characterization of Huff's action as one to quiet title rather than as one to settle a boundary dispute. The second sentence of the district court's opinion, however, states 'This case involves a trespass by timber cutting and presents a dispute over property boundaries.' We agree for the following reasons.
 
 
 16
 First, Huff's complaint states, in pertinent part,
 
 
 17
 3. Plaintiffs are, and were during all periods mentioned herein, the lawful owners of and in possession of a tract of land in Leslie County, Kentucky more particularly described in a deed . . ..
 
 
 18
 4. Defendant did sometime during the period January 1978 through December 1978, unlawfully and forcibly entered upon the land more particularly described in paragraph 3 hereof and did cut and destroy certain timber to the damage of the Plaintiffs in an amount as yet determined but, in no event, less than twenty thousand dollars ($20,000).
 
 
 19
 Second, Whitesburg answered and counterclaimed by stating, in pertinent part, the following:
 
 ANSWER
 
 20
 (4) For further answer and defense herein, the defendant says that any timber but by it in Leslie County, Kentucky, from January, 1978, through December, 1978, was owned by the defendant, and situated upon land owned by the defendant as shown by the Deed recorded in Deed Book 76, page 94, Letcher County Court Clerk's Office, a copy of which is attached hereto and made a part hereof as Exhibit A.
 
 COUNTERCLAIM
 
 21
 Comes the defendant, by counsel, and for its counterclaim herein, says:
 
 
 22
 (1) That the defendant is the owner and in possession of the real estate situated in Leslie County, Kentucky, described in Deed attached hereto and made a part hereof as Exhibit A.
 
 
 23
 (2) That plaintiffs have filed herein their complaint in this action, and here thereby set up claim to a portion of defendant's real estate heretofore referred to, which complaint is incorporated herein for the claims thereof; that the plaintiffs have thereby cast a cloud upon defendant's real estate as aforesaid, all without legal right, title or
 
 
 24
 (3) That defendant's title to said real estate should be quieted by order of this court, and the defendant has been damaged as a result of plaintiff's illegal cloud on its title in the sum of $10,000.
 
 
 25
 WHEREFORE, the defendant demands judgment of the Court as follows:
 
 
 26
 (a) That the defendant be adjudged to be the owner and in possession of the real estate described in Exhibit A attached hereto and made a part hereof, and defendant's title thereto be quieted by order of this Court.
 
 
 27
 (emphasis added). Third, our analysis of the complaint, answer, and counterclaim leads us to conclude that Huff's action was an action for trespass in which Whitesburg placed title to Williston Branch in dispute for the purpose of defending in the trespass action and for the purpose of counterclaiming and, therefore, setting forth its action to quiet title. Consequently, it is Whitesburg's counterclaim, not Huff's complaint, that sets forth an action to quiet title to Williston Branch. Our conclusion is underscored by the Kentucky judiciary's recognition of actions in trespass in which title to the land was put in issue. See, e.g., French v. Childers, 280 Ky. 339, 133 S.W.2d 63 (Ky. 1939); Burchfield v. Ping, 284 S.W.2d 818 (Ky. 1955); Johns v. Cumberland Tel. & Tel. Co., 25 Ky. Law Rep. 2074, 80 S.W. 165 (Ky. 1904).
 
 
 28
 To the argument that reputation evidence was inadmissible whether the action was for trespass or quieting title we note that although the Kentucky judiciary has held that reputation evidence is inadmissible to determine a disputed title, Arthur v. Humble, 140 Ky. 156 130 S.W. 958 (Ky. 1910); Williams v. Taylor, 4 Ky. 1 (1 Bibb) 41 (Ky. 1808); Whittaker v. Prater, 239 Ky. 173, 39 S.W.2d 248 (Ky. 1931), that judiciary also has repeatedly held that reputation evidence is admissible to prove an ancient boundary. See, e.g., Smith v. Prewit, 9 Ky (2 A.K. Marsh.) 155 (Ky. 1819); Smith v. Nowells, 12 Ky. (2 Litt.) 159 (Ky. 1822); Beaty v. Hudson, 39 Ky. (9 Dana) 322 (Ky. 1840); Smith v. Shackleford, 39 Ky. (9 Dana) 452 (Ky. 1840); Kentucky Land & Immigration Co. v. Crabtree, 113 Ky. 922, 70 S.W. 31, (Ky. 1902); Brooks v. Fizby, 9 Ky. Opin. 454 (Ky. 1876); Phillips v. Stewart, 133 Ky. 134, 97 S.W. 6 (Ky. 1906); Scott v. Alpine Coal Co., 122 S.W. 202 (Ky. 1909); Thurman v. Leach, 116 S.W. 300 (1909); Louisville Property Co. v. Rose, 221 S.W. 743, 184 Ky 221 (Ky. 1919); Hail v. Haynes, 312 Ky. 357, 227 S.W.2d 918 (Ky. 1950); Wagers v. Wagers, 238 S.W.2d 125 (Ky. 1951); Bringardner Lumber Co. v. Bingham, 251 S.W.2d 273 (Ky. 1952). It was not, therefore, reversible error for the district court to admit the reputation evidence in order to adjudicate Huff's complaint as defended by Whitesburg's answer.
 
 B
 
 29
 Whitesburg also argues that the district court committed reversible error by failing to quiet title to 11.47 acres of Willison Branch in its favor. Central to Whitesburg's contention is that there was no proof contrary to its ownership of that 11.47 acres because the district court erred in admitting the reputation evidence. Given that we have already decided that admission of the reputation evidence was not reversible error, we find Whitesburg's contention to be meritless.
 
 
 30
 For the foregoing reasons we affirm the district court's judgment.